UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-61479-CIV-HUCK/O'SULLIVAN


DONNA HILL,

      Plaintiff,

v.

LAZAROU ENTERPRISES, INC.,

      Defendant.

_____/


### REPORT AND RECOMMENDATION

THIS CAUSE comes before the Court on the parties' cross-motions to dismiss. See Defendant's Motion to Dismiss Counts III and IV of Second Amended Complaint (DE# 55, 11/16/10); Plaintiff's Motion to Dismiss the Defendant's Amended Counterclaim (DE# 64, 11/29/10). This matter was referred to the undersigned by the Honorable Paul C. Huck, United States District Court Judge for the Southern District of Florida, pursuant to 28 U.S.C. § 636(b). See Order of Reference to Magistrate Judge (DE# 92, 1/13/11). Having reviewed the applicable filings and law, the undersigned respectfully RECOMMENDS that the Defendant's Motion to Dismiss Counts III and IV of Second Amended Complaint (DE# 55, 11/16/10) and the Plaintiff's Motion to Dismiss the Defendant's Amended Counterclaim (DE# 64, 11/29/10) be **GRANTED in part and DENIED in part**. The Court should dismiss with prejudice the plaintiff's retaliation claim under the Florida Civil Rights Act and the defendant's breach of contract counterclaim.

## BACKGROUND

**A.    Procedural Background**

On or about June 15, 2010,[1] the plaintiff filed her Amended Complaint in state

court. See Amended Complaint (DE# 3, 8/18/10). On August 17, 2010, the defendant

removed the case to this Court. See Notice of Removal (DE# 1, 8/17/10).

In the Amended Complaint, the plaintiff asserted claims for pregnancy

discrimination in violation of the Florida Civil Rights Act (Count I) and pregnancy

discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. § 2000e(k) (Count II). The defendant's answer (dated August 6, 2010) to the

Amended Complaint did not assert any counterclaims. See Defendant's Answer to

Amended Complaint and Affirmative Defenses (DE# 4, 8/18/10). The defendant's

answer (dated July 6, 2010) to the original complaint asserted a counterclaim for

fraudulent misrepresentation. See Defendant's Answer and Affirmative Defenses and

Counterclaim (DE# 5, 8/18/10).[2] The plaintiff moved to dismiss the defendant's

counterclaim (DE# 12, 8/19/10).[3] The Court permitted the parties to brief the motion.

See Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss

---

[1] The Notice of Removal (DE# 1 at 2, 8/17/10) disputes when the defendant was served with the Amended Complaint. This issue is not pertinent to the matters at hand.

[2] The defendant's counterclaim which was titled a counterclaim for "fraud" was construed by this Court as a counterclaim for fraudulent misrepresentation. See Order Requiring Supplemental Briefing (DE# 34 at 1 n.1, 10/12/10).

[3] The plaintiff initially filed a motion to dismiss in state court. See Plaintiff's Motion to Dismiss the Defendant's Counterclaim  (DE# 6, 8/18/10). This Court denied as moot the initial motion to dismiss in light of the second motion to dismiss filed by the plaintiff. See Order Denying as Moot Motion to Dismiss (DE# 13, 8/23/10).

Counterclaim (DE# 14, 9/1/10); Plaintiff Donna Hill's Reply Memorandum in Support of Her Motion to Dismiss Defendant's Counterclaim (DE# 31, 9/29/10); Defendant's Supplemental Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss Counterclaim (DE# 39, 10/19/10).

On October 8, 2010, the plaintiff moved for leave to file an amended complaint to assert a claim of retaliation against the defendant for asserting the fraud counterclaim in the instant action. See Plaintiff Donna Hill's Motion for Leave to Amend Complaint to Add Retaliation Count (DE# 33, 10/8/10). On November 1, 2010, the Court granted the plaintiff's motion to dismiss the defendant's counterclaim. See Order (DE# 51, 11/1/10). The Court provided the defendant with leave to amend the counterclaim and add a claim for breach of contract. Id. The Court also granted the plaintiff's motion for leave to assert a retaliation claim[4] against the defendant and to correct the date in which the plaintiff discovered she was pregnant. Id. The plaintiff amended the Second Amended Complaint[5] by interlineation. See Notice of Amendment of Amended Complaint by Interlineation (DE# 49, 10/30/10). The notice states that "[o]n or about October 15, 2008, Plaintiff discovered that she was pregnant." Id. The defendant filed its Amended Counterclaim for fraudulent misrepresentation and breach of contract on November 10,

---

[4] The Second Amended Complaint asserts retaliation claims under the Florida Civil Rights Act (Count III) and under Title VII of the Civil Rights Act of 1965, as amended (Count IV). See Second Amended Complaint (DE# 33-1, 10/8/10).

[5] Although the plaintiff's notice of amendment refers to the "amended complaint," it appears that the plaintiff is referring to the Second Amended Complaint (DE# 33-1, 10/8/10). See Notice of Amendment of Amended Complaint by Interlineation (DE# 49, 10/30/10).

2010. See Amended Counterclaim (DE# 52, 11/10/10).

**B.    Cross-Motions to Dismiss**

On November 16, 2010, the defendant filed the instant motion seeking to dismiss the plaintiff's retaliation claims. See Defendant's Motion to Dismiss Counts III and IV of Second Amended Complaint (DE# 55, 11/16/10). The plaintiff filed her response on December 2, 2010. See Plaintiff Donna Hill's Memorandum in Response to Defendant's Motion to Dismiss Counts III and IV of Second Amended Complaint (DE# 69, 12/2/10).[6] The defendant filed its reply on December 7, 2010. See Defendant's Reply Memorandum of Law Supporting Lazarou's Motion to Dismiss Counts III and IV of Second Amended Complaint (DE# 70, 12/9/10).

The plaintiff has moved to dismiss the defendant's counterclaims for fraudulent misrepresentation and breach of contract. See Plaintiff's Motion to Dismiss the Defendant's Amended Counterclaim (DE# 64, 11/29/10). The defendant filed its response on December 9, 2010. See Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss Amended Counterclaim (DE# 76, 12/9/10). The plaintiff filed her reply on December 20, 2010. See Plaintiff Donna Hill's Reply Memorandum in Support of Her Motion to Dismiss Defendant's Amended Counterclaim (DE# 81, 12/20/10).

---

[6] The plaintiff's response appears to have been filed twice. The later filed response appears to correct typographical errors. In this Report, the undersigned will cite to the later filed response (DE# 69).

**STANDARDS OF REVIEW**

**A.      Rule 12(b)(6) Standard**

The defendant seeks to dismiss the plaintiff's retaliation counts for failure state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Defendant's Motion to Dismiss Counts III and IV of Second Amended Complaint (DE# 55 at 1, 11/16/10). The plaintiff also seeks dismissal of the defendant's fraudulent misrepresentation and breach of contract counterclaims under Rule 12(b)(6). See Plaintiff's Motion to Dismiss the Defendant's Amended Counterclaim (DE# 64 at 1, 11/29/10). The Court's analysis is generally limited to the four corners of the pleading and the attached exhibits. Grossman v. Nationsbank, 225 F.3d 1228, 1231 (11th Cir. 2000). The Court must also accept the non-moving party's well-pled facts as true and construe the complaint in the light most favorable to that party. Caravello v. Am. Airlines, Inc., 315 F. Supp. 2d 1346, 1348 (S.D. Fla. 2004) (citing United States v. Pemco Aeroplex, Inc., 195 F.3d 1234, 1236 (11th Cir. 1999) (en banc)). To survive a motion to dismiss, the complaint must contain factual allegations which are "enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). The issue to be decided is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scheuer, 468 U.S. 183 (1984).

5

**B.      Rule 12(b)(1) Standard**

As an additional basis for dismissal, the plaintiff argues that the Court does not have subject-matter jurisdiction over the defendant's fraudulent misrepresentation and breach of contract counterclaims. See Plaintiff's Motion to Dismiss the Defendant's Amended Counterclaim (DE# 64 at 1, 11/29/10). Rule 12(b)(1) of the Federal Rules of Civil Procedure allows for the dismissal of a claim when it is determined that the court lacks subject-matter jurisdiction. See FED. R. CIV. P. 12 (b)(1). "Because a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case . . . ." Smith v. GTE Corp., 236 F.3d 1292, 1299 (11th Cir. 2002). "When a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1) the district court is free to independently weigh facts, and may proceed as it never could under Rule 12(b)(6) or Fed. R. Civ. P. 56." Morrison v. Amway Corp., 323 F.3d 920, 925 (11th Cir. 2003) (quoting Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)).

## ANALYSIS

**A.      Defendant's Motion to Dismiss the Plaintiff's Retaliation Claims**

The defendant seeks to dismiss the plaintiff's retaliation claims (Counts III and IV of the Second Amended Complaint) for failure to state a claim upon which relief can be granted pursuant to FED. R. CIV. P. 12(b)(6). See Defendant's Motion to Dismiss Counts III and IV of Second Amended Complaint (DE# 55, 11/16/10). The plaintiff asserted two retaliation claims in the Second Amended Complaint (DE# 33, 10/8/10). The retaliation claims are made pursuant to the Florida Civil Rights Act (hereinafter "FCRA") and Title

6

VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII"). <u>See</u> Second

Amended Complaint (DE# 33 at 6-8, 10/8/10). The plaintiff's retaliation claims stem

from the defendant's assertion of a counterclaim for fraudulent misrepresentation in the

instant action. <u>Id.</u>[7] The defendant argues that the plaintiff's retaliation claims must be

dismissed because "Florida law provides for absolute immunity from damages based on

litigation conduct" and the plaintiff "has sustained no damages as a result of the filing of

the counterclaim." Defendant's Motion to Dismiss Counts III and IV of Second Amended

Complaint (DE# 55 at 1, 11/16/10). The plaintiff counters that "[t]he law is clear that

when an employer files suit against an employee or former employee who has filed a

Title VII action, the suit, particularly if it is frivolous or groundless in nature, is an act of

retaliation under Title VII." Plaintiff Donna Hill's Memorandum in Response to

Defendant's Motion to Dismiss Counts III and IV of Second Amended Complaint (DE#

69 at 4, 12/2/10) (citing <u>Steffers v. Stephan Co.</u>, 144 F.3d 1070 (7th Cir. 1998); <u>Urquiola

v. Linen Supermarket, Inc.</u>, No. 94-14-CIV-ORL-19, 1995 WL 266582 (N.D. Fla. Mar.

23, 1995); <u>EEOC v. Virginia Caroling Veneer Corp.</u>, 495 F. Supp. 775 (W.D. Va. 1980)).

These arguments are addressed below.

---

[7] The defendant later amended its counterclaim to assert a beach of contract
claim. <u>See</u> Amended Counterclaim (DE# 52, 11/10/10).

1.      **Florida's Litigation Privilege**[8]

The defendant maintains that the plaintiff's state and federal retaliation claims

are both barred by Florida's litigation privilege. Defendant's Motion to Dismiss Counts III

and IV of Second Amended Complaint (DE# 55 at 1, 11/16/10). Under Florida's

litigation privilege, "absolute immunity must be afforded to any act occurring during the

course of a judicial proceeding, regardless of whether the act involves a defamatory

statement or other tortious behavior . . . so long as the act has some relation to the

proceeding." Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire

Ins. Co., 639 So. 2d 606, 608 (Fla. 1994). The Florida Supreme Court has held that the

litigation privilege applies to common law of causes action as well as statutory causes

of action: "we hold that the litigation privilege applies in all causes of action, whether for

common-law torts or statutory violations." Echevarria, McCalla, Raymer, Barrett &

Frappier v. Cole,  950 So. 2d 380, 384 (Fla. 2007).[9] "Florida's litigation privilege applies

---

[8] The defendant's litigation privilege argument is based on Florida law and not on a federal common law privilege. See Defendant's Motion to Dismiss Counts III and IV of Second Amended Complaint (DE# 55 at 1, 11/16/10) (stating that "[t]he retaliation claims are unsupportable as Florida law provides for absolute immunity from damages based on litigation conduct."); Defendant's Reply Memorandum of Law Supporting Lazarou's Motion to Dismiss Counts III and IV of Second Amended Complaint (DE# 70 at 5, 12/9/10) (stating that "the litigation privilege under Florida law prevents a claim for retaliation based on the filing of a legitimate counterclaim."); Steffes v. Stepan Co., 144 F.3d 1070, 1075 (7th Cir. 1998) (observing that the district court may have been applying a federal common law litigation privilege but finding that "recognition of the [federal] litigation privilege . . . could interfere with the policies underlying the anti-retaliation provisions of Title VII and the ADA.").

[9] The litigation privilege is an affirmative defense. Am. Nat'l Title & Escrow of Fla., Inc. v. Guarantee Title & Trust Co., 810 So. 2d 996, 998 (Fla. 4th DCA 2002). An "affirmative defense, including the litigation privilege, may be considered in resolving a motion to dismiss when the complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action." Jackson v. BellSouth Telecomms., 372

to the state-law claims adjudicated in federal court." <u>Jackson v. BellSouth Telecomms.</u>, 372 F.3d 1250, 1274-75 (11th Cir. 2004) (citing <u>Green Leaf Nursery v. E.I. DuPont De Nemours & Co.</u>, 341 F.3d 1292, 1302-03 (11th Cir. 2003); <u>Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co.</u>, 135 F. Supp. 2d 1271, 1280 (S.D. Fla. 2001)).

### a.    Federal Retaliation Claim under Title VII

The defendant argues that the plaintiff's federal Title VII retaliation claim is barred by Florida's litigation privilege. The undersigned finds no merit in this argument. <u>See</u> <u>Ramos v. Hoyle</u>, No. 08-21809, 2009 WL 2151305, at *1 (S.D. Fla. July 16, 2009) (J. Martinez) ("declin[ing] to find that th[e] state privilege extends to bar Plaintiff's federal cause of action for retaliation under the FLSA."); <u>Pescatrice v. Orovitz</u>, 539 F. Supp. 2d 1375, 1380 n.4 (S.D. Fla. 2008) (J. Cohn) (stating that "[t]o the extent Defendants argue that this proposed settlement offer is protected by a state 'absolute litigation privilege' for statements made during litigation, that privilege would only apply to state court claims, and not the FDCPA [Fair Debt Collection Practices Act].").

 In <u>Ramos</u>, the plaintiffs filed, <u>inter alia</u>, Fair Labor Standards Act (hereinafter "FLSA") claims against their former employers. <u>Ramos</u>, 2009 WL 2151305, at *1. The employers, in turn, asserted counterclaims for assault, battery, intentional infliction of severe emotional distress and false imprisonment against one of the plaintiffs. <u>Id.</u> The plaintiff amended her complaint to assert a claim of retaliation under the FLSA[10] against

---

F.3d 1250, 1274-75 (11th Cir. 2004) (citations and internal quotation marks omitted).

[10] Although the retaliation claim in <u>Ramos</u> was based on the FLSA, this Court in <u>Ramos</u> observed that a FLSA retaliation claim is analyzed under the same framework as a Title VII retaliation claim: "Retaliation claims under the FLSA are analyzed using the familiar <u>McDonnell Douglas [Corp. v. Green</u>, 411 U.S. 792 (1973)] framework

the defendants. Id. at *8. The Court granted summary judgment in favor of the plaintiff

on the defendants' counterclaims. Id. at 6-8. The plaintiff also moved for summary

judgment on her retaliation claim. The defendants argued that the "[p]laintiff's retaliation

claim [wa]s barred by the Florida litigation privilege." Id. at *8. This Court rejected this

argument and granted summary judgment in favor of the plaintiff on the retaliation

claim. In rejecting the defendants' litigation privilege argument, this Court "decline[d] to

find that this state privilege extends to bar Plaintiff's federal cause of action for

retaliation under the FLSA." Id. at *10.

        This Court in Ramos cited to Steffes v. Stepan Co., 144 F.3d 1070, 1074 (7th

Cir. 1998) and Rosania v. Taco Bell of America, Inc., 303 F. Supp. 2d 878 (N.D. Ohio

2004) in granting summary judgment in favor of the plaintiff on that plaintiff's FLSA

retaliation claim. Ramos, 2009 WL 2151305, at *10. In Steffes, the Seventh Circuit

stated that the application of a state privilege to defeat a federal retaliation claim "would

indeed constitute error. A state absolute privilege purporting to confer immunity from

suit cannot defeat a federal cause of action." Steffes, 144 F.3d at 1074. In Rosania, the

plaintiff moved for leave to assert a retaliation claim under the Family Medical Leave

Act ("FMLA") because the defendant had asserted two counterclaims for conversion

and unjust enrichment. The defendant argued that the amendment would be futile

because, inter alia, the litigation privilege conferred immunity on the defendant in

---

applied to **retaliation claims under Title VII**, the ADEA and the ADA." Ramos, 2009
WL 2151305 at *8 (quoting Burnette v. Northside Hosp., 342 F. Supp. 2d 1128, 1133
(N.D. Ga. 2004)) (emphases added); Phillips v. M.I. Quality Lawn Maintenance, Inc.,
No.10-20698, 2010 WL 4237619, at *4 n.7 (S.D. Fla. Oct. 21, 2010) (J. Seitz)
(observing that "courts routinely examine FLSA retaliation claims under the same
standards as Title VII retaliation claims.") (citations omitted).

asserting their counterclaim. Id. at 888. The court rejected this argument and allowed

the plaintiff to amend his complaint to assert a retaliation claim: "the [c]ourt finds that

Plaintiff's proposed retaliation claim is neither barred nor made futile by the litigation

privilege." Id. at 889.

> In the instant case, the defendant argues that:
>
> the [c]ourt [in Rosania v. Taco Bell of America, Inc., 303 F. Supp. 2d 878
> (N.D. Ohio 2004)] relied on the decisions in Green Leaf Nursery v. E.I.
> duPont de Nemours & Co., 341 F.3d 1292 (11 Cir. 2003) and Levin,
> Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States
> Fire Insurance Co., 639 So. 2d 606, 608 (Fla. 1994) for the proposition
> that defendant was immune from liability pursuant to an absolute litigation
> privilege under Florida law for actions taken "during the course of a judicial
> proceeding." **That is the precedent that must be followed here even
> though [the plaintiff] argues that this Court should follow the
> Seventh Circuit decision in Steffes [v. Stepan Co., 144 F.3d 1070,
> 1074 (7th Cir. 1998)], which [the plaintiff] incorrectly analyzes.**

Defendant's Reply Memorandum of Law Supporting Lazarou's Motion to Dismiss

Counts III and IV of Second Amended Complaint (DE# 70 at 3, 12/9/10) (emphasis

added). The undersigned notes that Green Leaf Nursery v. E.I. Dupont De Nemours

and Co., 341 F.3d 1292 (11th Cir. 2003) and Levin, Middlebrooks, Mabie, Thomas,

Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co., 639 So. 2d 606 (Fla. 1994) did not address

the issue of whether Florida's litigation privilege could bar a federal statutory claim. In

Green Leaf, the plaintiffs alleged fraud and federal Racketeer Influenced and Corrupt

Organization Act (RICO) violations against the defendant. Green Leaf, 341 F.3d at

1296. On the defendant's motion for judgment on the pleadings, "the district court found

that Florida law governed Plaintiffs' tort claims and dismissed all of Plaintiffs' **state law**

**claims** as barred by Florida's litigation privilege." Id. at 1298 (emphasis added).[11] However, "[t]he district court denied [the defendant]'s motion for judgment on the pleadings as to Plaintiffs' federal RICO claims." Id. at 1299. The federal RICO claims were later dismissed "for lack of any valid predicate acts." Id. On appeal, the Eleventh Circuit affirmed the district court. The Eleventh Circuit did not, however, decide that the plaintiffs' federal RICO claims were barred by Florida's litigation privilege. In Levin, the Florida Supreme Court determined that Florida's litigation privilege applied to actions based on tortious interference with a business relationship, a state law claim. 639 So. 2d at 608. Thus, contrary to the defendant's assertion, Green Leaf and Levin are not binding on the issue presented here.

The undersigned is persuaded by the reasoning in Ramos and concludes that the Florida litigation privilege cannot bar the plaintiff's federal Title VII retaliation claim. Accordingly, the undersigned respectfully **RECOMMENDS** that the Court **DENY** the defendant's motion to dismiss to the extent it seeks the dismissal of the plaintiff's Title VII retaliation claim based on Florida's litigation privilege.

### b.    Florida Retaliation Claim

Having determined that Florida's litigation privilege does not bar the plaintiff's federal retaliation claim under Title VII, the undersigned must now address whether Florida's litigation privilege bars the plaintiff's retaliation claim under the Florida Civil Rights Act. The Florida Supreme Court has held that the litigation privilege applies to

---

[11] As an alternative basis for dismissing the state law claims, "the district court found that Plaintiffs had not reasonably relied on any misrepresentation by [the defendant]." Green Leaf, 341 F.3d at 1298-99.

statutory causes of action. <u>Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole</u>, 950 So. 2d 380, 384 (Fla. 2007). The plaintiff's retaliation claim under the Florida Civil Rights Act is premised on the defendant's assertion of a counterclaim against the plaintiff in the instant action. <u>See</u> Amended Complaint (DE# 33-1 at 6-7, 10/8/10); Amended Counterclaim (DE# 52, 11/10/10). The assertion of a counterclaim is an act that occurs during the course of a judicial proceeding. Under Florida's litigation privilege, "absolute immunity must be afforded to any act occurring during the course of a judicial proceeding . . . so long as the act has some relation to the proceeding." <u>Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.</u>, 639 So. 2d 606, 608 (Fla. 1994). Accordingly, the undersigned concludes that the plaintiff's state retaliation claim under the Florida Civil Rights Act is barred by Florida's litigation privilege and **RECOMMENDS** that the plaintiff's Florida Civil Rights Act retaliation claim be **DISMISSED** with prejudice.

### 2.    Application of Title VII to Former Employees/Adverse Employment Action

Having determined that Florida's litigation privilege does not bar the plaintiff's federal retaliation claim under Title VII, the Court must address the remaining arguments raised in the defendant's motion to dismiss.[12] The defendant maintains that because the plaintiff was no longer employed by the defendant when the defendant asserted its counterclaim, the Court must dismiss the plaintiff's retaliation claim: "[the

---

[12] The defendant's arguments target the plaintiff's retaliation claims under Title VII and the Florida Civil Rights Act. Because the undersigned has already determined that the plaintiff's state retaliation claim under the Florida Civil Rights Act is barred by the Florida litigation privilege, the undersigned will address the defendant's remaining arguments only as to the plaintiff's Title VII retaliation claim.

plaintiff] is no longer an employee of [the defendant] and the protection of Title VII and the FCRA are no longer relevant as there was no adverse employment action by an employer against an employee." Defendant's Motion to Dismiss Counts III and IV of Second Amended Complaint (DE# 55 at 3, 11/16/10) (capitalizations omitted). The undersigned finds no merit to this argument. A former employee can bring a retaliation claim under Title VII against a former employer. See Robinson v. Shell Oil Co., 519 U.S. 337, 346 (1997) (holding that § 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), allows suits by former employees); Bailey v. USX Corp., 850 F.2d 1506, 1509-10 (11th Cir. 1988) (stating that "a strict and narrow interpretation of the word 'employee' to exclude former employees would undercut the obvious remedial purposes of Title VII" and "hold[ing] that former employees may sue for retaliation under Title VII."). Thus, it does not matter that the plaintiff was no longer employed by the defendant when the defendant asserted the counterclaim. See Ramos, 2009 WL 2151305, at *10 (granting summary judgment in favor of plaintiff on retaliation claim even though counterclaim was asserted after the plaintiff left her employment with the defendants).

The defendant relies on Hernandez v. Crawford Bldg. Material Co., 321 F.3d 528 (5th Cir. 2003) (per curiam) in support of its argument that the plaintiff's retaliation claim must be dismissed. See Defendant's Motion to Dismiss Counts III and IV of Second Amended Complaint (DE# 55 at 3, 11/16/10) (stating that "Hernandez v. Crawford Bldg. Material Co., 321 F.3d 528 (5th Cir. 2003) correctly analyzes the issue."). In Hernandez, the Fifth Circuit held that a counterclaim could not serve as the basis for a retaliation claim under Title VII: "given our strict interpretation of retaliation claims, an employer's filing of a counterclaim cannot support a retaliation claim in the Fifth Circuit."

14

Hernandez, 321 F.3d at 532-33. However, as the court in Rosania noted, "[t]he

Hernandez court premised its decision on the fact that [i]n the Fifth Circuit, only an

'ultimate employment decision' by an employer can form the basis for liability for

retaliation" and that "the Fifth Circuit has questioned the continued validity of its own

strict interpretation." Rosania v. Taco Bell of America, Inc., 303 F. Supp. 2d 878, 884-85

(N.D. Ohio 2004) (citing Hernandez, 321 F.3d at 531, 533) (internal quotation marks

omitted); see also Gill v. Rinker Materials Corp., No. 3:02-CV-13, 2003 WL 749911, at

*5 (E.D. Tenn. Feb. 24, 2003) (observing that "the Fifth Circuit analyzes the 'adverse

employment action' element more strictly than do most other circuits, and in this regard,

has acknowledged it holds a minority view.") (citing Burger v. Cent. Apartment Mgmt,

Inc.,168 F.3d 875, 878 n. 3 (5th Cir. 1999)). In fact, the concurring opinion in

Hernandez observed that "[a] majority of the federal circuits that have considered the

question have held that the protection afforded by the anti-retaliation provision extends

to adverse employment actions that, while substantial, fall short of ultimate employment

decisions" and that "the only other circuit that purports to follow the 'ultimate

employment decision' rule, the Eighth Circuit, in practice applies something broader."

Hernandez, 321 F.3d at 533 (J. Dennis, concurring) (citations omitted). This Court has

permitted plaintiffs to maintain retaliation claims based on conduct that occurred after

the employment relationship ended. See Ramos, 2009 WL 2151305 (granting summary

judgment in favor of plaintiff on retaliation claim based on the defendants' assertion of

counterclaims even though counterclaims were asserted after the plaintiff left her

employment with the defendants); Phillips v. M.I. Quality Lawn Maintenance, Inc.,

No.10-20698, 2010 WL 4237619, at *4-5 (S.D. Fla. Oct. 21, 2010) (J. Seitz) (rejecting

15

argument on motion to dismiss that plaintiffs could not maintain FLSA retaliation claim because plaintiffs were no longer employed at the time the questionable conduct took place and finding that "an employer's retaliation against an employee need not be limited to conduct related to employment or occurring at the workplace to be actionable.")[13] (citing Burlington N. & Stanta Fe Ry. Co. v. White, 548 U.S. 53 (2006)); Munroe v. PartsBase, Inc., No. 08-80431-CIV, 2008 WL 4998777, at *3 (S.D. Fla. Nov. 20, 2008) (on a motion to dismiss FLSA retaliation claim "declin[ing] to hold, as a matter of law, that a counterclaim cannot be retaliatory."). Thus, the undersigned concludes that the defendant is not entitled to the dismissal of the plaintiff's Title VII retaliation claim based on the defendant's assertion of a counterclaim merely because the actions underlying the plaintiff's retaliation claim occurred after the plaintiff's employment with the defendant.

The defendant also attempts to distinguish between the filing of a lawsuit against an employee following an EEOC charge, which it admits is retaliatory, and the assertion of a counterclaim: "The caselaw may be clear that filing a defamation lawsuit based on the **filing of an EEOC charge** is retaliatory, but that is not what [the defendant] did. [The defendant] filed a counterclaim in response to a fraudulent lawsuit filed by [the plaintiff]." See Defendant's Reply Memorandum of Law Supporting Lazarou's Motion to Dismiss Counts III and IV of Second Amended Complaint (DE# 70 at 2, 12/9/10) (emphasis in original). The defendant repeatedly insists that the "counterclaim was

---

[13] This Court in Phillips denied the motion to dismiss the retaliation claims but required a more definite statement with respect to the retaliation claim of one of the plaintiffs "[t]o ensure the [c]omplaint is clear as to the facts supporting [the plaintiff's] claim that she was reasonably dissuaded from pursuing an FLSA claim. . . ."

filed, not in retaliation for filing EEOC charges, but because [the plaintiff] has provided false information under oath to the EEOC, the Florida Unemployment Appeals Commission and in documents filed with this Court." Defendant's Motion to Dismiss Counts III and IV of Second Amended Complaint (DE# 55 at 3, 11/16/10). In making this argument, the defendant ignores the confines of Rule 12(b)(6) motion.[14] In ruling on a Rule 12(b)(6) motion, the Court must accept the plaintiff's well-pled facts as true and construe the complaint in the light most favorable to the plaintiff. Caravello v. American Airlines, Inc., 315 F. Supp. 2d 1346, 1348 (S.D. Fla. 2004) (citing United States v. Pemco Aeroplex, Inc., 195 F.3d 1234, 1236 (11th Cir. 1999) (en banc)). Here, the Second Amended Complaint alleges that the defendant's counterclaim has no basis in law and "was done with the purpose of retaliating against [the plaintiff] for exercising her rights under Title VII . . . ." Second Amended Complaint (DE# 33-1 at 7, 10/8/10). The Court must accept these facts as true. Accordingly, the defendant's argument that the counterclaim was not filed in retaliation is not well taken.

### 3. Damages Argument

The defendant also argues, without citing any case law, that the plaintiff "has suffered no damages as a result of [the defendant]'s counterclaim and with no damages she has no cause of action." Defendant's Motion to Dismiss Counts III and IV of Second Amended Complaint (DE# 55 at 4, 11/16/10); see also Defendant's Reply Memorandum of Law Supporting Lazarou's Motion to Dismiss Counts III and IV of

---

[14] In fairness, the plaintiff is also guilty of arguing disputed facts in her motion to dismiss. See, e.g., Plaintiff's Motion to Dismiss the Defendant's Amended Counterclaim (DE# 64 at 8, 11/29/10) (stating that "it defies credulity for Defendant to state that a busser position requires much training, if any at all.").

Second Amended Complaint (DE# 70 at 1, 12/9/10) (stating that "[t]he retaliation claims are based on [the defendant]'s filing [of] a counterclaim for fraud and [the plaintiff] has not [pled] to sustaining damages with a material adverse effect."). The plaintiff does not address this argument in her response. See Plaintiff Donna Hill's Memorandum in Response to Defendant's Motion to Dismiss Counts III and IV of Second Amended Complaint (DE# 69 at 2, 12/2/10).

"To establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate: (1) that he engaged in statutorily protected activity; (2) that he suffered adverse employment action; and (3) that the adverse employment action was causally related to the protected activity." Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1388 (11th Cir. 1998) (citation omitted). The defendant's damages argument appears to target the second prong (whether the plaintiff has suffered adverse employment action) since it clearly does not apply to the first or third prong. In Phillips, this Court found that one of the plaintiffs had adequately pled a FLSA retaliation claim based on the defendants' filing of a lawsuit against that plaintiff in state court where "[the plaintiff] ha[d] alleged that Defendants ha[d] no basis for their claim, ha[d] not produced any evidence in support and ha[d] filed their lawsuit to harass [that plaintiff] because she attempted to assert a claim for overtime wages . . ." Phillips, 2010 WL 4237619, at *5. Similarly here, the plaintiff has alleged that the defendant filed a counterclaim against the plaintiff "which has no basis in law," that the "filing of the [c]ounterclaim was done with the purpose of retaliating against [the plaintiff] for exercising her rights under Title VII" and that "[h]ad [the p]laintiff . . . not filed the instant lawsuit in the exercise of her rights under . . . Title VII . . . [the d]efendant never would have filed any legal claims

against [the plaintiff]." Second Amended Complaint (DE# 33 at 7, 10/8/10). Accordingly, the plaintiff has asserted a cause of action for retaliation under Title VII.

Based on the foregoing, the undersigned respectfully recommends that the defendant's motion to dismiss Counts III and IV of the Second Amended Complaint be **GRANTED in part and DENIED in part**. The Court should dismiss the plaintiff's state retaliation claim with prejudice.[15] The undersigned concludes that the plaintiff has stated a claim upon which relief can be granted on her federal retaliation claim under Title VII. Accordingly, the plaintiff's Title VII retaliation claim should not be dismissed.

**B.     Plaintiff's Motion to Dismiss the Defendant's Fraudulent Misrepresentation and Breach of Contract Counterclaims**

The plaintiff seeks to dismiss the defendant's fraudulent misrepresentation and breach of contract counterclaims. See Plaintiff's Motion to Dismiss the Defendant's Amended Counterclaim (DE# 64, 11/29/10). With respect to the fraudulent misrepresentation counterclaim, the plaintiff argues that the defendant cannot assert a claim upon which relief can be granted because an employer may not legally inquire whether an employee or prospective employee is pregnant: "[o]bviously, if an employer cannot ask an employee or job applicant about pregnancy, neither is an employee or a job applicant required to disclose whether she is pregnant." Id. at 5. As to the breach of contract counterclaim, the plaintiff argues that an employee cannot prospectively waive

_____

[15] The undersigned recommends that the plaintiff's Florida Civil Rights retaliation count be dismissed with prejudice because any future amendment to this count would be futile. See Jackson v. BellSouth Telecommunications, Inc., 181 F. Supp. 2d 1345, 1365 (S.D. Fla. 2001) (stating that "[b]ecause Florida's litigation privilege affords these defendants absolute immunity regarding these allegations, these counts are DISMISSED WITH PREJUDICE."), aff'd, 372 F.3d 1250 (11th Cir. 2004).

her rights under Title VII or the Florida Civil Rights Act. Id. at 6.  The plaintiff also argues that the court lacks subject-matter jurisdiction over the counterclaims because they are permissive counterclaims. Id. at 15. The undersigned will address these arguments in turn.

### 1.  Fraudulent Misrepresentation Counterclaim

The plaintiff seeks to dismiss the defendant's fraudulent misrepresentation counterclaim asserted in the defendant's Amended Counterclaim (DE# 52, 11/10/10). In its Amended Counterclaim, the defendant alleges that "[the plaintiff] made statements during the employment application process that she was able to perform the duties of a busser, knowing that she was pregnant and intending to instigate her termination so she could allege pregnancy discrimination." Amended Counterclaim (DE# 52 at ¶ 19, 11/10/10). The defendant further alleges that it relied on the plaintiff's representations and on two contracts signed by the plaintiff. Id. at ¶ 20.[16] Lastly, the defendant alleges that it suffered injury in the form of damages to its reputation and compensatory damages in training the plaintiff, rescheduling other employees after the plaintiff refused to work and training a replacement. Id. at ¶ 21-22. The plaintiff maintains that "because pregnancy is an issue about which a prospective employer may not inquire nor must a prospective employee disclose, it is wholly immaterial when Plaintiff . . . discovered she was pregnant and whether it was before or after she applied for the job as a busser with Defendant." Plaintiff's Motion to Dismiss the Defendant's Amended Counterclaim (DE# 64 at 7, 11/29/10). The Court previously observed, when reviewing the plaintiff's prior

---

[16] These documents are discussed in detail below.

motion to dismiss the defendant's counterclaim, that "[the plaintiff]'s briefing often confuses the claims at issue, repeatedly arguing that she has a viable claim for pregnancy discrimination, not that [the defendant]'s counterclaim fails to state a viable claim for fraudulent misrepresentation." Order Requiring Supplemental Briefing (DE# 34 at 3, 10/12/10). The instant motion to dismiss continues to suffer from the same infirmity.

The undersigned finds that the defendant's fraudulent misrepresentation counterclaim survives a Rule 12(b)(6) motion to dismiss. "[T]here are four elements of fraudulent misrepresentation: '(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation.'" Butler v. Yusem, 44 So. 3d 102, 105 (Fla. 2010) (quoting Johnson v. Davis, 480 So. 2d 625, 627 (Fla.1985)). In the instant case, the defendant has alleged that (1) "[the plaintiff] made statements during the employment application process that she was able to perform the duties of a busser, knowing that she was pregnant and intending to instigate her termination so she could allege pregnancy discrimination," (2) the defendant relied on the plaintiff's representations and on two contracts signed by the plaintiff and (3) defendant alleges that it suffered injury in the form of damages to its reputation and compensatory damages in training the plaintiff, rescheduling other employees after the plaintiff refused to work and training a replacement. Amended Counterclaim (DE# 52 at ¶¶ 19-22, 11/10/10). The defendant has adequately pled a cause of action for fraudulent misrepresentation. The plaintiff takes issue with whether the defendant actually suffered damages, see supra.

However, for purposes of a Rule 12(b)(6) motion, the Court must accept this fact as true. Accordingly, the undersigned recommends that the plaintiff's motion to dismiss be **DENIED** with respect to the defendant's fraudulent misrepresentation counterclaim.

> **2.      Breach of Contract Counterclaim**

The plaintiff also seeks dismissal of the defendant's breach of contract counterclaim. The defendant's breach of contract counterclaim is premised on two forms signed by the plaintiff in September 2008. <u>See</u> Amended Counterclaim (DE# 52 at ¶¶ 4-5, 11/10/10). The first form is titled "Probationary Employment Form." Exhibit A (DE# 52-1 at 2, 11/10/10). The Probationary Employment Form states, in pertinent part, as follows: "I, Donna Hill, the undersigned recognize and accept as a condition of my employment at **Flashback Diner**, that my employment is probationary for the first **90 days**. I understand that I may be terminated at any time during this probationary period without cause and without recourse." <u>Id.</u> (emphasis in original). The second form is titled "Employee Handbook and Agreement." Exhibit B (DE# 52-1 at 4-10). The defendant fails to identify what specific language in the Employee Handbook and Agreement, Exhibit B (DE# 52-1 at 4-10), prohibits the plaintiff from filing the instant lawsuit and the EEOC charge. The undersigned has reviewed the Employee Handbook and Agreement and finds no language that prohibits the plaintiff from bringing any claims against the defendant arising from the 90 day probationary period.

Leaving aside the threshold question of whether these two forms proscribe the filing of the plaintiff's EEOC charge and the instant lawsuit,[17] the undersigned agrees

---

[17] The undersigned has serious misgivings about whether the two forms executed by the plaintiff even prohibit the filing of an EEOC charge or a discrimination

with the plaintiff that an employee cannot contract away her prospective claims under Title VII and the Florida Civil Rights Act. Alexander v. Gardner-Denver Co., 415 U.S. 36, 51 (1974) (stating that "there can be no prospective waiver of an employee's rights under Title VII"). An employee cannot prospectively waive his or her Tile VII rights "because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." Schwartz v. Florida Bd. of Regents, 807 F.2d 901, 906 (11th Cir. 1987) (internal citation and quotations marks omitted). At the time the plaintiff executed the forms underlying the defendant's breach of contract claim, any claims she might have under Title VII had not yet materialized. Thus, these claims were prospective claims, which could not be waived.

The cases[18] relied on by the defendant are easily distinguishable. In Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991), for instance, the Supreme Court

---

lawsuit. The "Probationary Employment Form" makes no mention of the EEOC or the plaintiff's civil rights. See Exhibit A (DE# 52-1 at 2, 11/10/10). It merely states: "my employment is probationary for the **first 90 days**. I understand that I may be terminated at any time during this probationary period without cause and without recourse." Id. (emphasis in original). The undersigned is at a loss as to the applicability of the second form titled "Employee Handbook and Agreement." Exhibit B (DE# 52-1 at 4-10). That form requires that the plaintiff abide by numerous rules including arriving 15 minutes prior to the start of her shift, wearing an appropriate uniform, abiding by state regulations regarding food preparation, not chewing gum while working and discusses on the job injuries, illnesses, days off, etc. If an employee quits, the Employee Handbook and Agreement states that the employee is "required to give at least one week's notice to management in order to be considered eligible . . . to return to work someday in the future should [the employee] decide to do so." Id. Nowhere in the Employee Handbook and Agreement does it state that the employee may not bring any claims against her employer during the 90 day probationary period. Nonetheless, this issue does not need to be addressed because the undersigned concludes that the defendant cannot show the existence of a valid, enforceable contract.

[18] Those cases are cited in Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss Amended Counterclaim (DE# 76 at 5, 12/9/10).

ruled that an employee could be compelled to bring his ADEA claim under a collective-bargaining agreement's compulsory grievance/arbitration procedures and could be precluded from bringing a federal cause of action. The Supreme Court reasoned that "[b]y agreeing to arbitrate a statutory claim, **a party does not forgo the substantive rights afforded by the statute**; it only submits to their resolution in an arbitral, rather than a judicial, forum." Id. (emphasis added). Presumably, if the arbitration proceedings are somehow legally deficient, the party may return to federal court for review. Thus, Gilmer is clearly distinguishable from the instant case because the two forms supporting the defendant's breach of contract claim (to the extent they can be construed as contracts and accepting, arguendo, the defendant's interpretation that these forms precluded the plaintiff from filing the EEOC charge and from filing the instant lawsuit) would prospectively deprive the plaintiff of substantive rights conferred by Title VII.

The defendant also relies on Paladino v. Avnet Computer Techs., Inc., 134 F.3d 1054 (11th Cir. 1998). In Paladino, the Eleventh Circuit affirmed the district court's order denying a motion to compel arbitration of Title VII claims because the arbitration agreement did not generally and fairly inform the employee that it covered statutory claims such as Title VII[19] and contained language which "[i]f read as [the defendant] propose[d], [wa]s fundamentally at odds with the purposes of Title VII because it completely proscribe[d] an arbitral award of Title VII damages." Paladino, 134 F.3d at 1059-60. To the extent that the defendant relies on Paladino for the proposition that a

---

[19] The undersigned notes that the two forms relied on by the defendant as the basis of its breach of contract claim also did not inform the plaintiff that she was waiving Title VII rights.

Title VII plaintiff can be contractually compelled to arbitrate his or her statutory claims, the two forms relied on by the defendant in support of its breach of contract claim do not contain arbitration provisions and the defendant in the instant case is not seeking to compel arbitration.

The defendant also cites to EEOC v. Cosmair Inc., 821 F.2d 1085 (5th Cir. 1987), EEOC v. Goodyear Aerospace Corp., 813 F.2d 1539, 1543 (9th Cir. 1987) and Rogers v. Gen. Elec. Co., 781 F.2d 452, 454 (5th Cir. 1986). Cosmair Inc., an age discrimination case, held, in the alternative, "that a waiver of the right to file a charge [with the EEOC] is void as against public policy." Cosmair Inc., 821 F.2d at 1090. The defendant's breach of contract claim alleges that the plaintiff committed a breach by filing the EEOC charge and the instant lawsuit. See Amended Counterclaim (DE# 52 at ¶ 28, 11/10/10). It is unclear how the Cosmair decision is of any assistance to the defendant.

The remaining cases, Goodyear and Rogers, are also inapplicable. In Goodyear, the EEOC brought a federal lawsuit against Goodyear on behalf of an employee who claimed Goodyear had failed to promote her based on her race and in retaliation of a prior EEOC charge. 813 F.2d at 1541. While the case was pending, Goodyear entered into a private settlement with the employee without the EEOC's approval. Id. at 1541-42. As part of the settlement, the plaintiff was promoted to a higher paying position. Id. The district court granted Goodyear's motion for summary judgment concluding that the settlement mooted the case. Id. at 1542. The EEOC appealed to the Ninth Circuit. The Ninth Circuit affirmed in part and reversed in part finding that the settlement mooted the EEOC's claim for backpay on behalf of the employee but did not moot the EEOC's right

of action seeking injunctive relief. Id. at 1544. Goodyear is distinguishable from the instant case because it concerned a settlement after the filing of a federal discrimination lawsuit. It was not a prospective waiver of a discrimination claim. Moreover, the employee in Goodyear, as part of the settlement, was promoted to a higher paying position. 813 F.2d at 1541-42. Thus, the employee obtained some redress for her alleged discrimination claims. This is in stark contrast to the instant case where the defendant purports that the plaintiff's execution of two forms prior to or at the commencement of her employment foreclosed any discrimination claims that could subsequently arise during the plaintiff's initial 90 days of employment with the defendant.

The defendant also cites to Rogers v. Gen. Elec. Co., 781 F.2d 452, 454 (5th Cir. 1986). In Rogers, the Fifth Circuit observed that "[w]hile a release of Title VII claims will not ordinarily violate public policy, an employee may validly release only those Title VII claims arising from **'discriminatory acts or practices which antedate the execution of the release**.'" 781 F.2d at 454 (citing United States v. Allegheny-Ludlum Indus., Inc., 517 F.2d 826, 853 (5th Cir. 1975)) (emphasis added). In Rogers, the Fifth Circuit found that the release in question was not a prospective waiver because: "[the plaintiff] signed the release in the instant case on August 8, 1983, and, by the express terms of the release, **waived only those Title VII claims arising 'on or before' that date**. No future claims were waived nor did the district court apply the release to a claim arising after the release was executed." Id. at 455 (emphasis added). Here, the plaintiff signed the forms in September 2008. The alleged discriminatory conduct occurred after that date. Thus, any waiver of the plaintiff's civil rights would have been prospective at

26

the time she signed the forms. Accordingly, <u>Rogers</u> is inapplicable to the instant case.

Lastly, <u>United States v. Allegheny-Ludlum Indus., Inc.</u>, 517 F.2d 826, 860-61 (5th Cir. 1975)[20] concerned the enforcement of two consent decrees entered as part of a settlement in a federal lawsuit alleging, <u>inter alia</u>, Title VII violations. The Fifth Circuit in <u>Allegheny</u> expressly stated that an "employer [may not] approach the employee directly in an effort to obtain a prospective waiver [of Title VII rights] 'as part of the economic bargain' with the union, or, by extension, with the employee even if there is no union." <u>Id.</u> at 858. This improper action is precisely what occurred here if the Court accepts the defendant's position that the two forms executed by the plaintiff prior to or at the commencement of her employment with the defendant waived the plaintiff's right to file an EEOC charge or file a discrimination lawsuit.

In sum, none of the cases relied on by the defendant support the defendant's position that the plaintiff can prospectively waive her statutory rights under Title VII. At best, these cases show that a plaintiff can contractually agree to submit his or her Title VII claims to arbitration or agree to forfeit past Title VII claims as part of a settlement or a release. In those cases, the plaintiff's civil rights claims were not foreclosed before they materialized as the defendant purports to do here.

Having determined that the plaintiff could not prospectively waive her Title VII claims, the undersigned also concludes that the plaintiff could not prospectively waive her claims under the Florida Civil Rights Act. "Florida courts have held that decisions

---

[20]  The Eleventh Circuit in <u>Bonner v. City of Prichard</u>, 661 F. 2d 1206, 1207 (11th Cir. 1981) (<u>en banc</u>), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

construing Title VII are applicable when considering claims under the Florida Civil Rights Act." Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir. 1998); see also Carsillo v. City of Lake Worth, 995 So. 2d 1118, 1119 (Fla. 4th DCA 2008), rev. denied, 20 So. 3d 848 (Fla. 2009) (unpublished table decision) (stating that "[i]t is well-established that if a Florida statute is patterned after a federal law, the Florida statute will be given the same construction as the federal courts give the federal act.") (citing State v. Jackson, 650 So. 2d 24 (Fla. 1995)).

"The elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages. Beck v. Lazard Freres & Co., LLC, 175 F.3d 913, 914 (11th Cir. 1999) (citing Abruzzo v. Haller, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992)). Because the defendant cannot, as a matter of law, establish the existence of a valid, enforceable contract, the undersigned respectfully recommends that the Court **GRANT** the plaintiff's motion to dismiss the defendant's breach of contract counterclaim with prejudice.

### 3.     Subject-Matter Jurisdiction Argument

The plaintiff also argues that the Court lacks subject-matter jurisdiction to adjudicate the defendant's state law fraudulent misrepresentation[21] counterclaim. See Plaintiff's Motion to Dismiss the Defendant's Amended Counterclaim (DE# 64 at 15, 11/29/10). For the reasons stated below, the undersigned concludes that the Court has

---

[21] The plaintiff's subject-matter jurisdiction argument is directed at both counterclaims. However, because the undersigned has already determined that the defendant's breach of contract counterclaim cannot survive a Rule 12(b)(6) motion to dismiss, the plaintiff's jurisdiction argument is addressed with respect to the remaining counterclaim for fraudulent misrepresentation.

subject-matter jurisdiction over the fraudulent misrepresentation counterclaim.

At the outset, the defendant argues that Judge Huck's Order (DE# 51) permitting the defendant to file an amended counterclaim moots the plaintiff's jurisdictional argument. See Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss Amended Counterclaim (DE# 76 at 7, 12/9/10). The plaintiff maintains that the Court did not consider its jurisdiction argument because it determined that the plaintiff had waived it by failing to address it in its reply. See Plaintiff Donna Hill's Reply Memorandum in Support of Her Motion to Dismiss Defendant's Amended Counterclaim (DE# 81 at 9, 12/20/10).

The undersigned is unpersuaded by the defendant's argument. There is nothing in the language of the Court's Order (DE# 51) indicating that it considered the issue of jurisdiction and ruled in favor of the defendant. The Order simply states that "[the defendant] is granted leave to amend the Counterclaim to 1) allege actual damages for fraudulent misrepresentation, 2) set forth with more specificity the grounds for [the plaintiff's] alleged fraudulent misrepresentation, and 3) add a claim for breach of contract." Order (DE# 51, 11/1/10). The defendant failed to provide the undersigned with the transcript of the Court's October 29, 2010 hearing where the Court considered the issues raised in the plaintiff's prior motion to dismiss. Thus, there is nothing on this record to suggest that the Court has already ruled on the plaintiff's jurisdiction argument.[22]

---

[22] Along these lines, the plaintiff argues that the issues raised in the defendant's motion to dismiss have already been resolved by the Court when it granted the plaintiff leave to amend her complaint to assert the retaliation claims. See Plaintiff Donna Hill's Memorandum in Response to Defendant's Motion to Dismiss Counts III and IV of

Having determined that the Court has not already ruled that it has subject-matter jurisdiction over the defendant's counterclaim, the undersigned will now address the plaintiff's substantive argument. Federal courts are courts of limited jurisdiction and the presumption is that a federal court lacks jurisdiction in a particular case until it has been demonstrated that jurisdiction over the subject matter exists. United States v. Rojas, 429 F.3d 1317, 1320 (11th Cir. 2005) (citation omitted). The Court's jurisdiction over the plaintiff's complaint is based on federal question jurisdiction. The defendant's counterclaim for fraudulent misrepresentation is premised on state law. In the instant case, the parties are both from Florida. Thus, there is no basis for diversity jurisdiction.

---

Second Amended Complaint (DE# 69 at 2, 12/2/10) ("the matter of whether Defendant's filing of a counterclaim against the Plaintiff gives rise to a claim for retaliation has not only already been fully briefed, the Court has heard oral argument on the issue, and **made its determination when it granted Plaintiff's Motion for Leave to Amend her Amended Complaint.**") (emphasis added). Thus, the plaintiff and the defendant both argue that the Court has already ruled on the issues when it granted them leave to amend the complaint and the counterclaim, respectively, yet both parties have filed cross-motions to dismiss. There are numerous examples in the parties' briefs of the proverbial pot calling the kettle black. For instance, the defendant faults the plaintiff for relying on case law outside this jurisdiction while in the same paragraph cites to cases from the current Fifth Circuit, the Eighth Circuit and the Ninth Circuit. Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss Amended Counterclaim (DE# 76 at 5, 12/9/10). The defendant also accuses the plaintiff of "go[ing] beyond the four corners of the complaint." Id. However, the defendant itself goes beyond the four corners of the Second Amended Complaint (DE# 33-1) in its motion to dismiss when it insists that its counterclaims were not asserted in retaliation of the plaintiff's filing of the EEOC charge. See Defendant's Motion to Dismiss Counts III and IV of Second Amended Complaint (DE# 55 at 3, 11/16/10); Defendant's Reply Memorandum of Law Supporting Lazarou's Motion to Dismiss Counts III and IV of Second Amended Complaint (DE# 70 at 2, 12/9/10). For her part, the plaintiff also accuses the defendant of looking beyond the four corners of the counterclaim while she herself does the same thing. See Plaintiff Donna Hill's Reply Memorandum in Support of Her Motion to Dismiss Defendant's Amended Counterclaim (DE# 81 at 1-2, 12/20/10).

The Court may exercise its supplemental jurisdiction over certain claims pursuant to 28 U.S.C. § 1367(a), which reads:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

The issue here is whether the defendant's fraudulent misrepresentation counterclaim is "so related to [the plaintiff's] claims in the action . . .  that [it] form[s] part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

The defendant's response to the plaintiff's motion to dismiss adopts the defendant's response to the plaintiff's prior motion to dismiss. See Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss Amended Counterclaim (DE# 76 at 7, 12/9/10) (stating that "[t]o the extent necessary, [the defendant] adopts herein the prior arguments in opposition to [the plaintiff]'s prior motion to dismiss filed by [the defendant on] September 1, 2010."). The defendant's prior response states that its counterclaim is compulsory because "[t]he counterclaim arises from the same allegations made by the [p]laintiff and [the d]efendant would have no cause of action but for [the p]laintiff's fraudulent complaints about pregnancy discrimination." See Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss Counterclaim (DE# 14 at 6, 9/1/10). If the defendant's counterclaim is compulsory, then the Court has supplemental jurisdiction over that claim. See Plant v.

Blazer Financial Services, Inc., 598 F.2d 1357, 1359 (5th Cir. 1979) (observing that "it is generally accepted that a compulsory counterclaim falls within the ancillary jurisdiction of the federal courts even if it would ordinarily be a matter for state court consideration.").

"Compulsory counterclaims are those that 'arise[ ] out of the transaction or occurrence that is the subject matter of the opposing party's claim.'" Constr. Aggregates, Ltd. v. Forest Commodities Corp., 147 F.3d 1334, 1337 n. 6 (11th Cir. 1998) (quoting FED. R. CIV. P. 13(a)). "A claim arises out of the same transaction or occurrence if there is a 'logical relationship' between the claims." Id. (citing Republic Health Corp. v. Lifemark Hosps. of Florida, Inc., 755 F.2d 1453, 1455 (11th Cir. 1985)). "Under [the logical relationship] test, there is a logical relationship when 'the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant.'" Republic Health Corp., 755 F.2d at 1455 (quoting Plant v. Blazer Financial Services, Inc., 598 F.2d 1357, 1361 (5th Cir. 1979)). Here, the defendant's fraudulent misrepresentation counterclaim stems, at least in part, from what the defendant alleges is the filing of a frivolous discrimination lawsuit. Notably, some of the defendant's damages include attorney's fees and costs it incurred in defending the instant case: "[the defendant] has been damaged by its reliance on [the plaintiff]'s false statements and signing of probationary documents and ha[s] incurred attorney['s] fees and costs to defend itself against false allegations and frivolous litigation." See Amended Counterclaim (DE# 52 at ¶ 17, 11/10/10). Thus, the defendant's fraudulent misrepresentation counterclaim arises, at least in part, from the plaintiff's assertion of a

32

Title VII discrimination claim in the instant case. Accordingly, the defendant's fraudulent misrepresentation counterclaim is a compulsory counterclaim and the Court has supplemental jurisdiction over it. The undersigned **RECOMMENDS** that the Court **DENY** the plaintiff's motion to dismiss the defendant's fraudulent misrepresentation counterclaim for lack of subject-matter jurisdiction.

## CONCLUSION

The plaintiff has stated a claim for retaliation under Title VII. Florida's litigation privilege bars the plaintiff from maintaining a state retaliation claim under Florida's Civil Rights Act based on the defendant's assertion of a counterclaim in the instant action. The plaintiff cannot contractually waive her right to bring claims under the Florida Civil Rights Act and Title VII. Accordingly, the defendant's breach of contract counterclaim must be dismissed with prejudice. The defendant has stated a claim upon which relief can be granted with respect to its fraudulent misrepresentation counterclaim and the Court has supplemental jurisdiction over this compulsory counterclaim.

## RECOMMENDATION

In accordance with the foregoing, the undersigned respectfully recommends that Defendant's Motion to Dismiss Counts III and IV of Second Amended Complaint (DE# 55, 11/16/10) and the Plaintiff's Motion to Dismiss the Defendant's Amended Counterclaim (DE# 64, 11/29/10) be **GRANTED in part and DENIED in part**. The Court should dismiss with prejudice the plaintiff's retaliation claim under the Florida Civil Rights Act and the defendant's breach of contract counterclaim.

The parties have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the

33

Honorable Paul C. Huck, United States District Court Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. See LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988); RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

   RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this **18th** day of February, 2011.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
United States District Judge Huck
All Counsel of Record