UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-61479-CIV-HUCK/O'SULLIVAN

DONNA HILL,

     Plaintiff,

v.

LAZAROU ENTERPRISES, INC.,

     Defendant.

_____/

## <u>REPORT AND RECOMMENDATION</u>

THIS CAUSE comes before the Court on the parties' cross-motions for summary judgment. See Lazarou's Motion for Summary Judgment and Memorandum of Law (DE# 71, 12/7/10), Plaintiff Donna Hill's Motion for Summary Judgment as to Liability and Incorporated Memorandum of Law (DE# 90, 1/11/11). This matter was referred to the undersigned by the Honorable Paul C. Huck, United States District Court Judge for the Southern District of Florida pursuant to 28 U.S.C. § 636(b). Having reviewed the applicable filings and law, the undersigned respectfully RECOMMENDS that Lazarou's Motion for Summary Judgment and Memorandum of Law (DE# 71, 12/7/10) and the Plaintiff Donna Hill's Motion for Summary Judgment as to Liability and Incorporated Memorandum of Law (DE# 90, 1/11/11) be **DENIED** for the reasons stated herein.

**<u>BACKGROUND</u>**

**A.      Procedural Background**

The plaintiff's Second Amended Complaint alleges four counts: two counts of pregnancy discrimination pursuant to the Florida Civil Rights Act (Count I) and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e(k) (Count II) and two counts of retaliation under the Florida Civil Rights Act (Count III) and Title VII (Count IV). <u>See</u> Second Amended Complaint (DE# 33-1, 10/8/10).[1] The defendant filed an Amended Counterclaim on November 10, 2010. <u>See</u> Amended Counterclaim (DE# 52, 11/10/10). The Amended Counterclaim alleges counterclaims for fraudulent misrepresentation (Count I) and breach of contract (Count II). <u>Id.</u>

On February 18, 2011, the undersigned issued a Report and Recommendation. <u>See</u> Report and Recommendation (DE# 111, 2/18/11). The Report and Recommendation recommended that the plaintiff's retaliation claim under the Florida Civil Rights Act and the defendant's counterclaim for breach of contract be dismissed with prejudice. <u>Id.</u>  On March 8, 2011, the Court adopted the undersigned's Report and Recommendation. <u>See</u> Order Adopting Report and Recommendation (DE# 131, 3/9/11). Thus, the only remaining claims are the plaintiff's claims for pregnancy discrimination under Title VII and the Florida Civil Rights Act, the plaintiff's claim for retaliation under Title VII and the defendant's counterclaim for fraudulent misrepresentation.

---

[1] The plaintiff amended the Second Amended Complaint by interlineation to state that "On or about October 15, 2008, Plaintiff discovered that she was pregnant." Notice of Amendment of Amended Complaint by Interlineation (DE# 49, 10/30/10).

**B.    Cross-Motions for Summary Judgment**

On December 7, 2010, the defendant moved for summary judgment. <u>See</u> Lazarou's Motion for Summary Judgment (DE# 71, 12/7/10). The plaintiff filed her response on January 19, 2011. <u>See</u> Plaintiff Donna Hill's Response in Opposition to Defendant Lazarou Enterprises, Inc.'s Motion for Summary Judgment (DE# 95, 1/18/11). The defendant filed a reply in support of its motion for summary judgment on January 31, 2011. <u>See</u> Lazarou's Reply Memorandum of Law in Support of Lazarou's Motion for Summary Judgment (DE# 97, 1/31/11). The plaintiff did not file a surreply.[2]

The plaintiff filed her motion for partial summary judgment on January 11, 2011. <u>See</u> Plaintiff Donna Hill's Motion for Summary Judgment as to Liability (DE# 90, 1/11/11); Notice of Correcting Scrivener's Error by Interlineation (DE# 93, 1/14/11). The defendant filed its response on January 31, 2011. <u>See</u> Lazarou's Memorandum of Law in Opposition to Hill's Motion for Partial Summary Judgment as to Liability (DE# 96, 1/31/11). The plaintiff filed her reply on February 13, 2011. <u>See</u> Plaintiff Donna Hill's [Reply] Memorandum in Support of Her Motion for Summary Judgment (DE# 104, 2/13/11). The defendant filed a surreply on February 25, 2011. <u>See</u> Lazarou's Surreply in Opposition to Hill's Motion for Partial Summary Judgment as to Liability (DE# 121, 2/25/11).

---

[2] The plaintiff moved for leave to file a surreply to address the police report referenced in the defendant's reply in support of its motion for summary judgment. <u>See</u> Plaintiff's Motion for Leave to File Sur-reply to Defendant's Reply in Support of its Motion for Summary Judgment (DE# 100, 2/9/11). The undersigned granted the plaintiff's motion. <u>See</u> Order (DE# 103, 2/10/11). The plaintiff did not file a surreply.

## **STANDARD OF REVIEW**

The plaintiff and the defendant both seek summary judgment. The plaintiff seeks

partial summary judgment on her pregnancy discrimination claims under Title VII and

the Florida Civil Rights Act. See Plaintiff Donna Hill's Motion for Summary Judgment as

to Liability (DE# 90 at 9, 1/11/11). The defendant seeks summary judgment on the

plaintiff's discrimination and retaliation claims and on its breach of contract

counterclaim. See Lazarou's Motion for Summary Judgment (DE# 71 at 1, 12/7/10).

The Court, in reviewing a motion for summary judgment, is guided by the

standard set forth in Fed. R. Civ. P. 56(a), which states, in relevant part, as follows:

> A party may move for summary judgment, identifying each claim or
> defense--or the part of each claim or defense--on which summary
> judgment is sought. The court shall grant summary judgment if the movant
> shows that there is no genuine dispute as to any material fact and the
> movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).

The Court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and that the movant is entitled to judgment as a

matter of law. The moving party bears the burden of meeting this standard. Celotex

Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). That is, "[t]he moving party bears the

initial responsibility of informing the . . . court of the basis for its motion, and identifying

those portions of the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, which it believes demonstrate the absence of

a genuine issue of material fact." U.S. v. Four Parcels of Real Prop., 941 F.2d 1428,

1437 (11th Cir. 1991) (quoting Celotex, 477 U.S. at 323) (internal quotation marks

omitted). In assessing whether the moving party has satisfied this burden, the Court is

4

required to view the evidence and all factual inferences arising therefrom in the light

most favorable to the non-moving party. Batey v. Stone, 24 F.3d 1330, 1333 (11th Cir.

1994). "When evaluating cross-motions for summary judgment, the Court analyzes

each individual motion on its own merits and thus views the facts on each motion in the

light most favorable to the respective nonmovant." Adega v. State Farm Fire & Cas. Ins.

Co., No. 07-20696, 2009 WL 3387689, at *3 (S.D. Fla. Oct.16, 2009). Summary

judgment is appropriate when there is no dispute as to any material fact and only

questions of law remain. Id. If the record presents factual issues, the Court must deny

the motion and proceed to trial. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

Despite these presumptions in favor of the non-moving party, the Court must be

mindful of the purpose of Rule 56 which is to eliminate the needless delay and expense

to the parties and to the Court occasioned by an unnecessary trial. Celotex, 477 U.S. at

322-23. Consequently, the non-moving party cannot merely rest upon bare assertions,

conclusory allegations, surmises or conjectures. Id. As the Supreme Court noted in

Celotex:

> [T]he plain language of Rule 56(c) mandates the entry of summary
> judgment . . . against a party who fails to make a showing sufficient to
> establish the existence of an element essential to that party's case, and
> on which that party will bear the burden of proof at trial.  In such a
> situation, there can be "no genuine issue as to any material fact," since a
> complete failure of proof concerning an essential element of the
> nonmoving party's case necessarily renders all other facts immaterial.

Id. at 322-23. The mere existence of a scintilla of evidence in support of the non-moving

party's position is insufficient. There must be evidence on which the jury could

reasonably find for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251

(1986).

## **FACTS**

The parties insist that there are no genuine issues of material fact precluding their respective summary judgment motions. The parties' briefs belie this assertion. In fact, the parties devote much of their briefs to factual disputes. The undersigned has set forth the facts of this case below. However, numerous footnotes were necessary to denote points of contention or provide further explanation. Some facts contained in the parties' briefs were not relevant to the issues raised on summary judgment and were omitted from this Report and Recommendation. Lastly, the plaintiff and the defendant refer to many of the same exhibits in their cross-motions for summary judgment and in their corresponding briefs. Because these overlapping exhibits were filed twice, they bear different docket entry numbers. For the Court's convenience, the undersigned will refer to the docket entry number corresponding to the exhibits filed by the defendant, whenever possible, as the defendant's motion was filed first. With this background in mind, the undersigned will proceed with the pertinent facts of this case.

Panagiota "Toula" Lazarou-Amanna is the owner of the Flashback Diner. Unemployment Hearing (DE# 71-5 at 19, 12/7/10). On September 30, 2008,[3] the plaintiff commenced her employment as a busser at the Flashback Diner. Lazarou's Statement of Undisputed Material Facts in Support of Lazarou's Motion for Summary

---

[3] In her statement of undisputed facts, the plaintiff states that she commenced her employment with the defendant on September 29, 2008. See Plaintiff Donna Hill's Statement of Undisputed Material Facts as to Which There Is No General Issue to Be Tried (DE# 90-1, ¶1, 1/11/11). The defendant does not dispute this fact in Lazarou's Objections to Hill's Statement of Fact in Opposition to Hill's Motion for Summary Judgment (DE# 96-1, 1/31/11). For summary judgment purposes it is immaterial whether the plaintiff commenced her employment with the defendant on September 29 or September 30, 2008.

6

Judgment (DE# 71-1, ¶9, 12/7/10). Jamal Qazi was the manager and the plaintiff's immediate supervisor. Unemployment Hearing (DE# 71-5 at 19, 12/7/10). As a busser, the plaintiff was required to carry a bus pan and put dirty dishes inside the bus pan. When full, the bus pans could weigh over 20 pounds and in excess of 50 pounds. Unemployment Hearing (DE# 71-5 at 33-34, 54, 12/7/10).[4] The plaintiff did not know how much the bus pans weighed at the diner. Deposition of Donna Hill (DE# 71-3 at 40, 12/7/10).

The plaintiff was a good employee. She arrived to work on time and the Flashback Diner had no reason for firing the plaintiff. Unemployment Hearing (DE# 71-5 at 26, 12/7/10); Plaintiff Donna Hill's Statement of Undisputed Material Facts as to Which There Is No General Issue to Be Tried (DE# 90-1, ¶1, 1/11/11).[5]

On October 15, 2008, the plaintiff was told she was pregnant during a visit to Dr.

---

[4] The plaintiff argues that "there are bus pans that, when full, weigh no more than fifteen pounds." Plaintiff Donna Hill's Response to Defendant Lazarou Enterprises, Inc.'s Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment (DE# 95-2, ¶13, 1/18/11). The plaintiff relies on a letter from Ms. Lazarou-Amanna offering to reinstate the plaintiff as a busser at the restaurant. Ms. Lazarou-Amanna's letter states: "[the plaintiff] requested her job back and she will get that with accommodation of a smaller bus pan **which cannot hold more than 15 lbs.** for our own piece [sic] of mind and the rules of Workmen's Comp." Letter from Panagiota Lazarou-Amanna (DE# 90-7 at 2, 1/11/11) (emphasis added). Ms. Lazarou-Amanna's offer to provide the plaintiff with a smaller bus pan does not negate or refute the testimony at the unemployment hearing that the bus pans at the diner, when full, weighed in excess twenty pounds. It merely shows that Ms. Lazarou-Amanna was willing to accommodate the plaintiff by providing her with a lighter bus pan after the fact.

[5] At the unemployment hearing, Ms. Lazarou-Amanna testified that before she learned the plaintiff was pregnant, there were a lot of days when the plaintiff left work early because she was not feeling well and called in sick "a couple of times." Unemployment Hearing (DE# 71-5 at 31, 12/7/10). The plaintiff denied leaving work early due to her pregnancy. Deposition of Donna Hill (DE# 71-3 at 82, 12/7/10).

Aaron Elkin, a gynecologist and obstetrician.[6] No one at the Flashback Diner asked the

plaintiff if she was pregnant.[7]

The last day the plaintiff worked at the Flashback Diner was December 5, 2008.

Deposition of Donna Hill (DE# 71-3 at 56, 12/7/10). On December 5, 2008, the plaintiff

saw a second obstetrician, Dr. Faris A. Hanna. Lazarou's Statement of Undisputed

Material Facts in Support of Lazarou's Motion for Summary Judgment (DE# 71-1, ¶10,

12/7/10). Dr. Hanna told the plaintiff that she was 17 weeks pregnant. Deposition of

Donna Hill (DE# 71-3 at 64, 12/7/10). On this visit, Dr. Hanna did not tell the plaintiff

that she had any work restrictions. Dr. Hanna gave the plaintiff a letter dated December

---

[6] The defendant disputes that the plaintiff first learned she was pregnant on October 15, 2008 and has introduced evidence, in the form of a police report (DE# 96-2, 1/31/11) dated November 11, 2008. The police report states in part that the plaintiff was approximately 12 weeks pregnant, that the plaintiff's boyfriend was present when the plaintiff learned she was pregnant and was "later informed by [the plaintiff] after confirming the pregnancy via medical exam." Police Report (DE# 96-2, 1/31/11). The plaintiff testified that she did not know she was pregnant when she applied for the job at the Flashback Diner in September 2008 and that she learned she was pregnant on October 15, 2008 from Dr. Elkin. See Deposition of Donna Hill (DE# 71-3 at 33-34, 12/7/10). At the unemployment hearing, the plaintiff testified she learned she was pregnant on December 5, 2008. Unemployment Hearing (DE# 71-5 at 85, 12/7/10). Of note, neither party has moved for summary judgment on the defendant's fraudulent misrepresentation counterclaim. Thus, whether the plaintiff learned she was pregnant on October 15, 2008 or earlier is not relevant to the issues raised in the summary judgment motions.

[7] There is some evidence that the defendant had a policy requiring pregnant employees to notify management of their pregnancies and obtain a doctor's note before returning to work. Unemployment Hearing (DE# 71-5 at 26, 35, 12/7/10). The defendant disputes this and has submitted the affidavit of Ms. Lazarou-Amanna. Affidavit of Panagiota (Toula) Lazarou-Amanna (DE# 96-5, 1/31/11). The plaintiff has asked that the Court strike or disregard this affidavit. Plaintiff Donna Hill's [Reply] Memorandum in Support of Her Motion for Summary Judgment (DE# 104 at 5, 2/13/11). For the reasons stated below, the undersigned recommends that the Court deny the plaintiff's request to strike or disregard Ms. Lazarou-Amanna's affidavit and find that the existence of this policy is a genuine issue of material fact.

5, 2008. See Initial Letter from Dr. Hanna (DE# 90-3, 1/11/11). The letter stated that the plaintiff was 17 weeks pregnant, that her last period was on August 3, 2008 and that her due date was May 10, 2009. Id. The letter did not contain any restrictions.

On December 7, 2008,[8] the plaintiff told Jamal Qazi, the manager and the plaintiff's immediate supervisor, that she was pregnant. The plaintiff was scheduled to work that day. Deposition of Donna Hill (DE# 71-3 at 68-69, 12/7/10) (although the plaintiff testified that she did not recall the date, she did recall that she was scheduled to work the day she informed Mr. Qazi of her pregnancy). On that day, the plaintiff gave Mr. Qazi the letter from Dr. Hanna. See Initial Letter from Dr. Hanna (DE# 90-3, 1/11/11). Mr. Qazi told the plaintiff:

> Listen, I understand but the thing is I cannot let you work today, Sunday, because I have to really find out if it is okay with the owner [Ms. Lazarou-Amanna]. I need more information on how much you can carry, the weight before I can let you work today. Bring in a doctor's note and then we will hear what the doctor says. . . .

Unemployment Hearing (DE# 71-5 at 55, 12/7/10). Although the plaintiff was scheduled to work on December 7, 2008, she was sent home. Id. at 86 (the plaintiff testified that "[Mr. Qazi] said he did not want me working the rest of the day. He wanted me to go

---

[8] The plaintiff disputes whether she notified Mr. Qazi of her pregnancy on December 5 or December 7, 2008. See Plaintiff Donna Hill's Response to Defendant Lazarou Enterprises, Inc.'s Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment (DE# 95-2, ¶11, 1/18/11). There is some testimony suggesting that the plaintiff informed the Flashback Diner of her pregnancy on December 5, 2008 and not December 7, 2008. See e.g., Unemployment Hearing (DE# 71-5 at 29, 12/7/10). For purposes of the instant summary judgment motions, it is immaterial whether the plaintiff notified the Flashback Diner on December 5th or on December 7th.

9

home until he gave the letter to [Ms. Lazarou-Amanna]").[9] Mr. Qazi later told the plaintiff

to obtain a letter from her obstetrician so that he could put her back on the schedule.

Deposition of Donna Hill (DE# 71-3 at 66, 12/7/10) (stating that Mr. Qazi told the

plaintiff "[t]o get a letter to clear [her] for work so he could put [the plaintiff] back on the

schedule."). At the time, the plaintiff had not requested any accommodations and did

not tell Mr. Qazi she had any complications or work restrictions.

The plaintiff also spoke to Ms. Lazarou-Amanna about her pregnancy. Ms.

Lazarou-Amanna asked the plaintiff: "How come you did not know [you were pregnant]?

And also, this paperwork [the letter from Dr. Hanna] does not include your limitations[.]"

Unemployment Hearing (DE# 71-5 at 29, 12/7/10). The plaintiff responded that she did

not know she was pregnant because she had been bleeding (implying that she had

what she believed were regular periods). Id. at 29; 89. Ms. Lazarou-Amanna told the

---

[9] The defendant states that "[t]he testimony cited in support of the statement that [the plaintiff] was sent home in the middle of her shift after informing [Mr.] Qazi she was pregnant is not supported by the record." Lazarou's Objections to Hill's Statement of Fact in Opposition to Hill's Motion for Summary Judgment (DE# 96-1, ¶5, 1/31/11). The undersigned disagrees. Mr. Qazi himself testified at the unemployment hearing that he told the plaintiff he could not let her work until she obtained a doctor's note. Unemployment Hearing (DE# 71-5 at 55, 12/7/10). The defendant states that "[the plaintiff] went home on December 5, 2008 [the parties dispute the date the plaintiff announced her pregnancy] because [the plaintiff] said she was bleeding as a result of a complicated pregnancy." Lazarou's Memorandum of Law in Opposition to Hill's Motion for Partial Summary Judgment as to Liability (DE# 96 at 3, 1/31/11). The defendant cites to the following testimony from Ms. Lazarou-Amanna: "So I said, 'You had complications, bleeding complications,' is what she told us because she was four and a half months pregnant. I'm sorry about that. She told us that she had no idea that she was pregnant. So there were complications and doctor's instructions." Unemployment Hearing (DE# 71-5 at 22, 12/7/10). There is nothing in the above quoted language that supports the defendant's position that the reason the plaintiff went home early (on the day she announced her pregnancy) was because of pregnancy complications. Moreover the "doctor's instructions" came two days later, when the plaintiff went back to see Dr. Hanna.

plaintiff that she did not want the plaintiff to lose her baby and sent the plaintiff back to her doctor to ascertain any limitations. Id. at 30. At that point, the plaintiff had not asked Ms. Lazarou-Amanna for any accommodations or told her of any work restrictions. Id. at 33.[10]

The plaintiff went back to Dr. Hanna on December 9, 2008 to obtain a letter allowing her to return to work. Deposition of Donna Hill (DE# 71-3 at 66, 12/7/10); Unemployment Hearing (DE# 71-5 at 86, 12/7/10). The plaintiff explained to Dr. Hanna her duties as a busser and told Dr. Hanna that the bus pans weighed about 20 pounds. Plaintiff Donna Hill's Statement of Undisputed Material Facts as to Which There Is No General Issue to Be Tried (DE# 90-1, ¶8, 1/11/11). Dr. Hanna wrote a note indicating that the plaintiff was unable to lift objects over 20 pounds. See Note from Dr. Hanna (DE# 71-4 at 4, 12/7/10). The note was dated December 9, 2008. Id. The plaintiff presented this note to Ms. Lazarou-Amanna. Unemployment Hearing (DE# 71-5 at 30, 12/7/10).

After the plaintiff notified her employer of the 20 pound weight restriction, the

--------

[10] The defendant states that "[w]hen [the plaintiff] gave [Mr.] Qazi the first doctor's note on December 7, 2008 (not December 5th as alleged – see Ex. 2 HILL's depo at pg 57, lines 7-10) [the plaintiff] asked to be transferred to a hostess/cashier position. (see Ammana [sic] affidavit)." Lazarou's Memorandum of Law in Opposition to Hill's Motion for Partial Summary Judgment as to Liability (DE# 96 at 5, 1/31/11). The defendant does not identify what portion of Ms. Lazarou-Amanna's affidavit supports this factual allegation. Moreover, Ms. Lazarou-Amanna testified at the unemployment hearing that before obtaining the weight restriction from Dr. Hanna, the plaintiff did not ask to be accommodated or state she had any restrictions because of her pregnancy. Unemployment Hearing (DE# 71-5 at 33, 12/7/10). Thus, there is no evidentiary support for the defendant's statement that when the plaintiff first announced her pregnancy, she asked for work as a hostess or cashier.

plaintiff was not allowed to work as a busser.[11] The plaintiff was told that she could work as a hostess or a cashier. See Deposition of Donna Hill (DE# 71-3 at 41, 12/7/10). No hostess or cashier positions were immediately available. Ms. Lazarou-Amanna told the plaintiff to call back on December 14, 2008 to obtain her schedule. Unemployment Hearing (DE# 71-5 at 103, 12/7/10).

On December 14, 2008, the plaintiff called Ms. Lazarou-Amanna asking if she had been put on the schedule as either a hostess or a cashier. Unemployment Hearing (DE# 71-5 at 21, 12/7/10). Ms. Lazarou-Amanna told the plaintiff that she did not have any job openings for her and suggested that the plaintiff borrow money from family or friends. Deposition of Donna Hill (DE# 71-3 at 16, 12/7/10); Unemployment Hearing (DE# 71-5 at 84, 12/7/10). The plaintiff quit or was fired on this day.[12]

After speaking with Ms. Lazarou-Amanna, the plaintiff spoke to Mr. Qazi on the telephone. Unemployment Hearing (DE# 71-5 at 90, 12/7/10) (stating that after speaking to "Toula," plaintiff spoke to Mr. Quazi). The plaintiff was crying. Id. at 99. Mr. Qazi told the plaintiff that they were trying to place her in position as a hostess or

---

[11] Ms. Lazarou-Amanna admitted that prior to obtaining the weight restriction from Dr. Hanna, the plaintiff did not ask to be accommodated because of her pregnancy. Unemployment Hearing (DE# 71-5 at 33, 12/7/10). Ms. Lazarou-Amanna testified, however, that the plaintiff wanted an accommodation after obtaining the weight restriction from Dr. Hanna. Id. at 30.

[12] The plaintiff testified that during this telephone conversation, Ms. Lazarou-Amanna told the plaintiff she was fired. Deposition of Donna Hill (DE# 71-3 at 16-17, 80, 12/7/10). The defendant maintains that Ms. Lazarou-Amanna told the plaintiff that she could work the week of December 22, 2008. Unemployment Hearing (DE# 71-5 at 21-22, 12/7/10). The plaintiff denies that anyone told her she was scheduled to work the week of December 22, 2008. Deposition of Donna Hill (DE# 71-3 at 32, 12/7/10). There is a genuine issue of material fact concerning whether the plaintiff quit or was fired from her employment with the defendant.

cashier but that they did not have an immediate position available for the plaintiff. Mr. Qazi told the plaintiff that he could not "give [her] a job as a bus person because [he] ha[d] a doctor's note and the doctor t[old the plaintiff] that [the plaintiff] c[ould not] pick up more than twenty pounds of weight and the bus pan weigh[ed] fifty pounds or . . . more." Id. at 53-54.[13] The plaintiff became upset and told Mr. Qazi that she was being discriminated against and that she was going to contact an attorney. Id. at 57, 91.[14]

On December 21, 2008, the plaintiff called Ms. Lazarou-Amanna to determine if she could pick up her paycheck. Unemployment Hearing (DE# 71-5 at 86-87, 12/7/10). Ms. Lazarou-Amanna asked the plaintiff why she was no longer working at the Flashback Diner and the plaintiff responded that she needed a job "right away." Id. at 21.[15] The plaintiff responded that if Ms. Lazarou-Amanna did not have immediate work

---

[13] The plaintiff testified that during this conversation Mr. Qazi told the plaintiff that Ms. Lazarou-Amanna had told Mr. Qazi that the plaintiff was a "bad busser[,] anyway." Unemployment Hearing (DE# 71-5 at 91, 12/7/10). Mr. Qazi denied making this statement. Id. at 114. Mr. Qazi also gave a second reason for not placing the plaintiff in her old busser position. He stated that other employees were already complaining that the plaintiff was working very slowly. Id. at 115.

[14] At deposition the plaintiff recalled stating that this was discrimination and that she was going to contact an attorney. Deposition of Donna Hill (DE# 71-3 at 29, 12/7/10). However, she testified that she made these statements to Ms. Lazarou-Amanna not Mr. Qazi. For summary judgment purposes, it does not matter whether the plaintiff communicated this information to Mr. Qazi or to Ms. Lazarou-Amanna.

[15] At the unemployment hearing, Ms. Lazarou-Amanna did not recall the date this conversation took place but believed it was the day the plaintiff went to the diner to pick up her paycheck. Unemployment Hearing (DE# 71-5 at 21, 12/7/10). It is undisputed that the date the plaintiff picked up her paycheck was December 21, 2008. Lazarou's Statement of Undisputed Material Facts in Support of Lazarou's Motion for Summary Judgment (DE# 71-1, ¶18, 12/7/10).

for the plaintiff as a cashier, the plaintiff wanted her old job as a busser. Id. at 22.[16] Ms.
Lazarou-Amanna told the plaintiff she could not work as a busser because of the
doctor's note prohibiting the plaintiff from lifting over twenty pounds. Id. Ms. Lazarou-
Amanna reminded the plaintiff of her pregnancy complications and that she could only
offer the plaintiff a cashier's position and told the plaintiff to be patient. Id. Ms. Lazarou-
Amanna stated that she asked the plaintiff to come in and discuss the situation and the
plaintiff responded "I have nothing to say to you"[17] and hung up the telephone. Id. 23,
91, 103. During this telephone conversation, the plaintiff told Ms. Lazarou-Amanna that
she believed she was being discriminated against based on her pregnancy. Id. at 87.

On that same day, the plaintiff went to the Flashback Diner to retrieve her
paycheck. Ms. Lazarou-Amanna sent her brother, Spiro Lazarou, to give the plaintiff her
paycheck because Ms. Lazarou-Amanna did not want to confront the plaintiff. When
Mr. Lazarou gave the plaintiff her paycheck, the plaintiff wanted to know why her
paycheck was dated for a later date.[18] At some point, Mr. Qazi took the paycheck and

---

[16] At her deposition, the plaintiff testified that she would not have continued bussing tables if it required her to lift more than 20 pounds because she did not want to harm her baby. Deposition of Donna Hill (DE# 71-3 at 66-68, 12/7/10).

[17] At the unemployment hearing, Ms. Lazarou-Amanna testified that the plaintiff's last words to her were "I have nothing to **f\*\*\*ing** talk to you about" before the plaintiff hung up the telephone. See Unemployment Hearing (DE# 71-5 at 23-24, 12/7/10) (emphasis added). At the unemployment hearing, the plaintiff denying using the word "f\*\*\*ing" but acknowledged saying "I have nothing to say to you" and admitted hanging up on Ms. Lazarou-Amanna. Id. at 91-92. At her deposition, the plaintiff denied or did not recall hanging up the telephone on Ms. Lazarou-Amanna. See Deposition of Donna Hill (DE# 71-3 at 30-31, 12/7/10).

[18] The parties dispute whether the plaintiff used profane language and called the employees of the Flashback Diner "scumbags" or "f\*\*\*ing scumbags" on December 21, 2008, the day she picked up her last paycheck from the Flashback Diner. The

cashed it for the plaintiff. Mr. Qazi did not tell the plaintiff he was going to put her on the schedule for the week of December 22, 2008. Unemployment Hearing (DE# 71-5 at 60, 62, 12/7/10). Between December 5, 2008 and December 22, 2008, the Flashback Diner had availability for a busser. Id. at 25.[19] The plaintiff would not have continued bussing tables if it required her to lift more than 20 pounds because she did not want to harm her baby. Deposition of Donna Hill (DE# 71-3 at 66-68, 12/7/10).

## ANALYSIS

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination on

---

defendant presented testimony at the unemployment hearing from Ms. Coe, a waitress at the diner, who heard the plaintiff say that Mr. Lazarou was an "a**hole" and that "everybody was a scumbag." Unemployment Hearing (DE# 71-5 at 68, 12/7/10). Mr. Lazarou also testified that the plaintiff called everyone a "scumbag." Id. at 72. Ms. Lagunas, a server at the diner, heard the plaintiff use the words "f***ing scumbag." Id. at 81. Ms. Lazarou-Amanna also submitted an affidavit attesting that the plaintiff cursed at the register in front of customers. Affidavit of Panagiota (Toula) Lazarou-Amanna (DE# 96-5, ¶ 21, 1/31/11). However, Ms. Lazarou-Amanna testified that she did not hear the plaintiff curse at the diner when she came to pick up her check. Unemployment Hearing (DE# 71-5 at 43, 12/7/10). The undersigned will disregard this portion of Ms. Lazarou-Amanna's affidavit because she lacks personal knowledge. Delaware Valley Floral Group, Inc. v. Shaw Rose Nets, LLC, 597 F.3d 1374, 1382 (11th Cir. 2010) (stating that "affidavits in support of or in opposition to summary judgment must be made with personal knowledge in order to create a genuine issue of material fact."). At the unemployment hearing, the plaintiff denied using foul language and at her deposition, the plaintiff did not recall using the words "scumbag" or "f***ing scumbags". See Unemployment Hearing (DE# 71-5 at 92, 12/7/10); Deposition of Donna Hill (DE# 71-3 at 32, 12/7/10). Thus, an issue of fact remains whether the plaintiff used foul language on December 21, 2008 when she picked up her paycheck.

[19] Ms. Lazarou-Amanna filed an affidavit stating that "[the plaintiff's] position as a busser did not remain open for a single day as we immediately scheduled another person to replace her." Affidavit of Panagiota (Toula) Lazarou-Amanna (DE# 96-5, ¶14, 1/31/11). However, at the unemployment hearing, Ms. Lazarou-Amanna testified that between December 5, 2008 and December 22, 2008 the plaintiff's old position remained available. These statements can be reconciled as follows: although the plaintiff was replaced, the Flashback Diner still had availability for a busser between December 5 and December 22, 2008.

the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)1. It expressly prohibits refusing to hire or discharging an employee based on a prohibited factor. Id. Likewise, Title VII also expressly provides that "[i]t shall be an unlawful employment practice for an employer . . . otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." Id. The Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k), provides that the prohibition against sex discrimination includes discrimination "on the basis of pregnancy, childbirth, or related medical conditions . . ." 42 U.S.C. § 2000e(k). "The analysis required for a pregnancy discrimination claim is the same type of analysis used in other Title VII sex discrimination suits." Armstrong v. Flowers Hosp., Inc., 33 F.3d 1308, 1312-13 (11th Cir. 1994) (citing Maddox v. Grandview Care Ctr., Inc., 780 F.2d 987, 989 (11th Cir. 1986)).

There are two types of actionable discrimination under Title VII: disparate treatment and disparate impact. Armstrong, 33 F.3d at 1312-13. "In disparate treatment [cases], an employer discriminates against a worker 'with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of' the individual's membership in a protected category." Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 807 (11th Cir. 2010) (citing 42 U.S.C. § 2000e-2(a)(1)). "Disparate treatment can take the form either of a 'tangible employment action,' such as a firing or demotion, or of a 'hostile work environment' that changes 'the terms and conditions of employment, even though the employee is not discharged, demoted, or reassigned.'" Id. (citing Hulsey v. Pride Rests., LLC, 367 F.3d 1238, 1245 (11th Cir. 2004)). Disparate

16

impact cases, on the other hand, "involve[ ] facially neutral employment practices that have significant adverse effects on protected groups . . . without proof that the employer adopted those practices with a discriminatory intent . . . . The evidence in these disparate impact cases usually focuses on statistical disparities, rather than specific incidents, and on competing explanations for those disparities." Reeves, 594 F.3d at 807-808 (citing Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 986-87 (1988)) (emphasis and internal quotation marks omitted). In the instant case, the plaintiff asserts that she was discriminated against due to her pregnancy and she has not alleged that a facially neutral policy had a disparate impact on her as a pregnant employee. Thus, this is a disparate treatment case.

## A.    Direct Evidence of Discrimination

"A plaintiff alleging a claim of disparate treatment must establish that the employer intended to discriminate against the protected group." Armstrong, 33 F.3d at 1313. The plaintiff must prove his or her case through either direct or circumstantial evidence of discrimination.[20] "Direct evidence of discrimination is evidence, that, 'if believed, proves [the] existence of [a] fact in issue without inference or presumption.'" Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999) (quoting Burrell v. Bd. of Trs. of Ga. Military Coll., 125 F.3d 1390, 1393 (11th Cir. 1997)) (alterations in original). "Direct evidence, by definition, must be motivated by discriminatory animus, be related

---

[20] There is case law stating that a plaintiff can prove disparate treatment by showing a pattern and practice of discrimination. See Wright v. Southland Corp., 187 F.3d 1287, 1293 n.8 (11th Cir. 1999) (stating "[i]t is sometimes said that there is a third method of proving discriminatory treatment – 'statistical proof of a pattern of discrimination.'") (quoting Buckley v. Hosp. Corp. of Am., Inc., 758 F.2d 1525, 1529 (11th Cir. 1985)). This method is not at issue here.

to the adverse employment decision, and be attributable to the individual responsible for discriminatory action." Bury v. Sky Chefs, No. 10-CV-20469, 2011 WL 197383, at *3 (S.D. Fla. Jan. 20, 2011) (J. King) (citing Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1227 (11th Cir. 2002)). "[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004) (quotations omitted). Moreover, if the evidence suggests, but does not prove, discriminatory motive, it is circumstantial evidence rather than direct evidence. Burrell, 125 F.3d at 1393.

If a plaintiff comes forward with direct evidence of discriminatory intent, an employer must prove that the same employment decision would have been made absent any discriminatory intent. Holland v. Gee, 719 F. Supp. 2d 1361, 1367 (M.D. Fla. 2010) (citing Young v. Gen. Foods Corp., 840 F.2d 825, 828 (11th Cir. 1988); Wright v. Southland Corp., 187 F.3d 1287, 1302-03 (11th Cir. 1999)).

**B.    Circumstantial Evidence of Discrimination**

To evaluate a discrimination claim supported by circumstantial evidence, the Court uses the traditional burden-shifting analysis articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002). Under the McDonnell Douglas framework:

> the plaintiff initially must establish a prima facie case of discrimination. By establishing a prima facie case, the plaintiff creates a rebuttable presumption that the employer unlawfully discriminated against [him or] her. The burden then shifts to the employer to rebut this presumption by producing evidence that its action was taken for some legitimate, non-discriminatory reason. Should the employer meet its burden of production, the presumption of discrimination is rebutted, and the inquiry proceeds to

18

a new level of specificity, in which the plaintiff must show that the proffered reason really is a pretext for unlawful discrimination. Although the intermediate burdens of production shift back and forth, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee remains at all times with the plaintiff.

Id. at 1272-73 (quotation marks and citations omitted).

There appears to be some confusion in the parties' briefs concerning the elements of a prima facie case of pregnancy discrimination. The plaintiff argues that the elements of her prima facie case of pregnancy discrimination consist of the following: "[i]n order to prove a prima facie case of pregnancy discrimination, [the plaintiff] is required to evidence the following: 1) that she was pregnant; 2) that an adverse employment action was taken against her; and 3) that her pregnancy was a substantial motivating factor that prompted the Defendant to take that action." Plaintiff Donna Hill's [Reply] Memorandum in Support of Her Motion for Summary Judgment (DE# 104 at 1, 2/13/11) (footnotes omitted) (citing Armstrong v. Flowers Hosp., Inc., 33 F.3d 1308, 1314 (11th Cir. 1994)). However, the pin point cite to the Armstrong decision states that:

> The elements of a plaintiff's prima facie case were established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973), and then refined in Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). Courts have modified the McDonnell Douglas/Burdine formulation as necessary to facilitate analysis in a wide range of discrimination claims. The district court in the case at hand properly applied the following formulation of the elements required to establish a prima facie case: (1) the plaintiff is a member of a group protected by Title VII; (2) the plaintiff was qualified for the position; (3) the plaintiff suffered an adverse effect on her employment; and (4) the plaintiff suffered from differential application of work or disciplinary rules. Armstrong v. Flowers Hosp., Inc., 812 F. Supp. 1183, 1189 (M.D. Ala. 1993).

Armstrong, 33 F.3d at 1314. The plaintiff inexplicably omits the second and fourth prong

19

of the prima facie case articulated in Armstrong. It appears that the more lenient prima face elements advocated by the plaintiff come from White v. Baxter Healthcare Corp., 533 F.3d 381, 400 (6th Cir. 2008). The Sixth Circuit in White held that the McDonnell Douglas framework did not apply to "mixed-motive" cases. Id. Instead, "a Title VII plaintiff asserting a mixed-motive claim need only produce evidence sufficient to convince a jury that: (1) the defendant took an adverse employment action against the plaintiff; and (2) "race, color, religion, sex, or national origin was a motivating factor" for the defendant's adverse employment action. Id. (emphasis omitted) (citing 42 U.S.C. § 2000e-2(m)). White is a Sixth Circuit opinion and not binding on this Court. Nonetheless, assuming arguendo that the White decision controls, the plaintiff has failed to plead a mixed-motive case. See Spees v. James Marine, Inc., 617 F.3d 380, 390 (6th Cir. 2010) (stating that "[the p]laintiff must give proper notice when bringing mixed-motive claims" and finding that the plaintiff in that case provided such notice when she alleged in her complaint that her pregnancy "was **a** motivating factor in [her employer's] treatment of her" and referenced mixed-motive in her summary judgment briefs) (emphasis in original). Thus, White is inapplicable to the instant case.

A mixed-motive case is one "where both legitimate and illegitimate reasons motivated the employer's decision" to take an adverse employment action against the employee. White, 533 F.3d at 396. In the instant case, the plaintiff alleges that the defendant "discriminated against [her] on the basis of [her] pregnancy, in violation of 42 U.S.C. §§ 2000e(k) and 2000e-2(a)(1)." Second Amended Complaint (DE# 33-1, ¶ 22, 10/8/10). The plaintiff does not allege that her pregnancy was only part of the reason she was terminated. Thus, the plaintiff's Second Amended Complaint does not provide

20

support for a mixed-motive theory of discrimination. The undersigned also finds no

support for a mixed-motive case in the plaintiff's summary judgment briefs. In fact, a

variation of the word "motive" appears in the plaintiff's briefs as follows: "The Sixth

Circuit [referring to the Spees case], after finding that the defendant's transfer of plaintiff

to the tool room was indeed an adverse employment action, held that the plaintiff's

pregnancy was at least **a motivating** factor in the transfer and thus unlawful." Plaintiff

Donna Hill's Motion for Summary Judgment as to Liability and Incorporated

Memorandum of Law (DE# 90 at 5, 1/11/11) (emphasis added); Plaintiff Donna Hill's

Response in Opposition to Defendant Lazarou Enterprises, Inc.'s Motion for Summary

Judgment (DE# 95 at 4-5, 1/18/11) (same).[21] The plaintiff also makes a reference to

motive in this sentence: "In order to prove a prima facie case of pregnancy

discrimination, [the plaintiff] is required to evidence the following: 1) that she was

pregnant; 2) that an adverse employment action was taken against her; and 3) that her

pregnancy was a substantial **motivating** factor that prompted the Defendant to take

that action." Plaintiff Donna Hill's [Reply] Memorandum in Support of Her Motion for

Summary Judgment (DE# 104 at 1, 2/13/11) (footnotes omitted) (citing Armstrong v.

Flowers Hosp., Inc., 33 F.3d 1308, 1314 (11th Cir. 1994)) (emphasis added);[22] Plaintiff

Donna Hill's Response in Opposition to Defendant Lazarou Enterprises, Inc.'s Motion

for Summary Judgment (DE# 95 at 2, 1/18/11) (same). These fleeting references to

---

[21] The word "motivated" can also be found on page 10 of the Plaintiff Donna Hill's Response in Opposition to Defendant Lazarou Enterprises, Inc.'s Motion for Summary Judgment (DE# 95). However, it is a reference to the plaintiff's motivation and therefore inapplicable.

[22] As noted above, this citation to the Armstrong decision is incorrect.

motive are insufficient to put the defendant on notice that this is a mixed-motive case. Thus, the undersigned concludes that the instant case is not a mixed-motive case. As a single motive case, the plaintiff must establish the following four elements of a prima facie case of pregnancy discrimination articulated in Armstrong: (1) the plaintiff is a member of a group protected by Title VII; (2) the plaintiff was qualified for the position; (3) the plaintiff suffered an adverse effect on her employment and (4) the plaintiff suffered from differential application of work or disciplinary rules. Armstrong, 33 F.3d 1308, 1314 (11th Cir. 1994) (citation omitted).

**C.    Plaintiff's Pregnancy Discrimination Claims**[23]

**1.    Defendant's Motion for Summary Judgment**

The defendant seeks summary judgment on the plaintiff's discrimination claims under Title VII and the Florida Civil Rights Act. See Lazarou's Motion for Summary Judgment and Memorandum of Law (DE# 71 at 4, 12/7/10). The defendant maintains that it is entitled to summary judgment on the plaintiff's discrimination claims because "[the plaintiff] was not terminated, not treated differently because of her pregnancy and filed this lawsuit in violation of two contracts [the plaintiff] signed waiving her rights to

---

[23] The plaintiff asserts pregnancy discrimination claims under Title VII and the Florida Civil Rights Act. The undersigned's analysis of the plaintiff's Title VII claim also applies to the plaintiff's discrimination claim under the Florida Civil Rights Act. "Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act." Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir. 1998); see also Carsillo v. City of Lake Worth, 995 So. 2d 1118, 1119 (Fla. 4th DCA 2008), rev. denied, 20 So. 3d 848 (Fla. 2009) (unpublished table decision) (stating that "[i]t is well-established that if a Florida statute is patterned after a federal law, the Florida statute will be given the same construction as the federal courts give the federal act.") (citing State v. Jackson, 650 So. 2d 24 (Fla. 1995)). Accordingly, the undersigned will only address the plaintiff's Title VII discrimination claim in this Report and Recommendation.

sue or have any recourse for leaving her job while she was probationary." Id. at 3. The defendant's argument regarding the forms signed by the plaintiff at the beginning of her employment with the defendant has already been disposed of by the Court.[24] The defendant's remaining argument as to the pregnancy discrimination claims can be restated as follows: the plaintiff cannot meet the third and fourth prong of a prima facie case of pregnancy discrimination.

Under the McDonnell Douglas burden-shifting analysis, the plaintiff has the initial burden of establishing a prima facie case of pregnancy discrimination. The elements of a prima facie case of pregnancy discrimination are as follows: (1) the plaintiff is a member of a group protected by Title VII; (2) the plaintiff was qualified for the position or benefit; (3) the plaintiff suffered an adverse effect on her employment; and (4) the plaintiff suffered from differential application of work or disciplinary rules. Armstrong, 33 F.3d 1308, 1314 (11th Cir. 1994). The defendant's summary judgment argument focuses on the last two prongs. The undersigned will address these arguments below.

### a.   Adverse Employment Action

The parties dispute whether the plaintiff suffered an adverse employment action. The defendant argues that it is entitled to summary judgment on the plaintiff's

_____

[24] The undersigned has already determined that the two forms relied on by the defendant (to the extent they can be construed as contracts and accepting, arguendo, the defendant's interpretation that the language in these forms was broad enough to preclude the plaintiff from filing the EEOC charge and the instant lawsuit) are not legally valid or enforceable. See Report and Recommendation (DE# 111 at 28, 2/18/11). This Court adopted the undersigned's Report and Recommendation on March 8, 2011. See Order Adopting Report and Recommendation (DE# 131, 3/9/11). Accordingly, the defendant is not entitled to summary judgment on the plaintiff's pregnancy discrimination claims based on the plaintiff's execution of these two forms.

pregnancy discrimination claims because the plaintiff quit and was not fired by the

defendant. See Lazarou's Motion for Summary Judgment and Memorandum of Law

(DE# 71 at 4, 12/7/10). The plaintiff maintains that she was fired by the defendant

because of her pregnancy. The plaintiff further argues that the defendant's refusal to

allow the plaintiff to continue working as a busser was also an adverse employment

action. See Plaintiff Donna Hill's Response in Opposition to Defendant Lazarou

Enterprises, Inc.'s Motion for Summary Judgment (DE# 95 at 5, 1/18/11).

### (i)        Whether the Plaintiff Was Terminated

It is clear that the termination of employment is an adverse employment action

under Title VII. See Galloway v. GA Tech. Auth., 182 F. App'x. 877, 881 (11th Cir.

2006) (stating that "[i]t is clear that the denial of a pay raise, the denial of a promotion,

and a termination constitute adverse employment actions."). The parties dispute

whether the plaintiff was actually terminated by the defendant. The defendant states

that "[t]he only evidence that [the plaintiff] was terminated is [the plaintiff]'s **allegation**."

Lazarou's Motion for Summary Judgment and Memorandum of Law (DE# 71 at 4,

12/7/10) (emphasis added). The undersigned disagrees. The plaintiff provided sworn

deposition testimony to support this allegation. At her deposition, the plaintiff testified

that she was fired on December 14, 2008 and that "Toula"[25] used the words "You're

fired." See Deposition of Donna Hill (DE# 71-3 at 16-17, 12/7/10). Despite the

defendant's protestations to the contrary, the plaintiff's sworn deposition testimony is

evidence sufficient to create a genuine issue of material fact. It is true that there is also

---

[25] The name "Toula" refers to Ms. Lazarou-Amanna.

testimony from Ms. Lazarou-Amanna that the plaintiff was not terminated from her employment. Unemployment Hearing (DE# 71-5 at 20, 12/7/10). However, this is not an issue that can be resolved on summary judgment.

### (ii)   Whether the Defendant's Refusal to Allow the Plaintiff to Work as a Busser Was an Adverse Employment Action

The plaintiff advances a second theory of adverse employment action. The plaintiff argues that the defendant's refusal to allow the plaintiff to continue working as a busser was also an adverse employment action. See Plaintiff Donna Hill's Response in Opposition to Defendant Lazarou Enterprises, Inc.'s Motion for Summary Judgment (DE# 95 at 5, 1/18/11) (stating that "Lazarou admittedly refused to allow [the plaintiff] to continue in her busser position solely out of concern for [the plaintiff]'s fetus, such adverse job action was unjustified and thus unlawful."). The defendant disputes this. The defendant argues that the plaintiff was not working as a busser because she requested an accommodation: "[t]he affidavit of [Ms.] Lazarou-Amanna provides sworn testimony that [the plaintiff] requested an accommodation because of her pregnancy complications and bleeding, asking to be switched from a busser position to a cashier's position." Lazarou's Surreply in Opposition to Hill's Motion for Partial Summary Judgment as to Liability (DE# 121 at 2, 2/25/11).

Ms. Lazarou-Amanna's affidavit states the following: "HILL presented a [d]octor's note limiting her lifting to no more than twenty pounds and asked to switch her position to cashier. In early December 2008[, the plaintiff] Requested the accommodation of a different position because she was bleeding." Affidavit of Panagiota (Toula) Lazarou-Amanna (DE# 96-5, ¶ 4, 1/31/11). At the unemployment hearing, Ms. Lazarou-Amanna

admitted that the plaintiff did not request an accommodation until after she obtained the weight restriction from her doctor on December 9, 2008. Unemployment Hearing (DE# 71-5 at 33, 12/7/10) (emphasis added).[26] The defendant proffers a different interpretation of Ms. Lazarou-Amanna's testimony. It argues that: "[i]t is clear from the highlighted testimony that [the plaintiff] did request a reasonable accommodation and that was the reason she was requested to get a doctor's note." Lazarou's Surreply in Opposition to Hill's Motion for Partial Summary Judgment as to Liability (DE# 121 at 10, 2/25/11). The undersigned finds the defendant's interpretation of Ms. Lazarou-Amanna's testimony unreasonable, particularly when Ms. Lazarou-Amanna testified as follows:

Q. Okay, and **prior to the time that you asked her to get a doctor's note, she had never asked you for an accommodation** or told you that she had a restriction, isn't that true?

A. Correct.

Unemployment Hearing (DE# 71-5 at 33, 12/7/10) (emphasis added).

The undisputed facts are that on December 7, 2008, the plaintiff told Mr. Qazi

---

[26] The defendant argues, without citing any case law, that "[t]he issue of accommodation was not explored at the unemployment hearing as it was not relevant there and is therefore objectionable." Lazarou's Surreply in Opposition to Hill's Motion for Partial Summary Judgment as to Liability (DE# 121 at 2, 2/25/11). However, the issue of accommodation was explored at the unemployment hearing. See Unemployment Hearing (DE# 71-5 at 30-37, 12/7/10). The undersigned finds nothing objectionable in relying on the sworn testimony provided by Ms. Lazarou-Amanna and other witnesses at the unemployment hearing including testimony regarding accommodations. In fact both the plaintiff and the defendant cite to and rely extensively on the testimony elicited at the unemployment hearing in making their respective arguments for and against summary judgment. Accordingly, the undersigned finds no reason why the Court should not rely on the testimony provided by Ms. Lazarou-Amanna at the unemployment hearing regarding accommodations.

she was pregnant. On that day, the plaintiff was scheduled to work but was sent home by Mr. Qazi because of her pregnancy. Unemployment Hearing (DE# 71-5 at 55, 86, 12/7/10). In fact, Mr. Qazi specifically told the plaintiff:

> Listen, I understand but the thing is **I cannot let you work today**, Sunday, because I have to really find out if it is okay with the owner [Ms. Lazarou-Amanna]. I **need more information on how much you can carry, the weight before I can let you work today. Bring in a doctor's note** and then we will hear what the doctor says. . . .

Unemployment Hearing (DE# 71-5 at 55, 12/7/10) (emphasis added). At that time, the plaintiff had not yet asked for any accommodations or advised her employer of any restrictions. Ms. Lazarou-Amanna also provided testimony at the unemployment hearing that the plaintiff wanted her job as a busser back even after obtaining the weight restriction from Dr. Hanna. Unemployment Hearing (DE# 71-5 at 21-22, 12/7/10). Construing the facts in the light most favorable to the plaintiff, as the nonmoving party, that plaintiff was precluded from working as a busser by the defendant.

Not all negative actions taken by an employer constitute adverse employment actions. Thus, the undersigned must determine whether the defendant's refusal to allow the plaintiff to work as a busser was an adverse employment action. "To show an adverse employment action, an employee must demonstrate 'a **serious and material** change in the terms, conditions, or privileges of employment.'" Sampath v. Immucor, Inc., 271 Fed. App'x. 955, 962 (11th Cir. 2008) (quoting Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis in original). Here, it is undisputed that the defendant initially told the plaintiff she could start work as a hostess or a

cashier instead of working as a busser. <u>See</u> Deposition of Donna Hill (DE# 71-3 at 41, 12/7/10). Generally, a transfer to a different job position is insufficient to support of an adverse employment action. "A lateral transfer, that is a transfer which does not involve a demotion in form or substance, does not rise to the level of an adverse employment action." <u>Gonzalez v. Florida Dept. of Highway Safety and Motor Vehicles Div. of Fla. Highway Patrol</u>, 237 F. Supp. 2d 1338, 1348 (S.D. Fla.), <u>aff'd</u>, 45 Fed. App'x. 886 (11th Cir. 2002) (unpublished table decision). However, "[a] transfer to a different position can . . . be adverse if it involves a reduction in pay, prestige, or responsibility." <u>Hyde v. K.B. Home, Inc.</u>, 355 Fed. App'x. 266, 269 (11th Cir. 2009) (citation and quotation marks omitted). In the instant case, the defendant did not have an immediate opening for a hostess or cashier when it offered this new position to the plaintiff. At the same time, the defendant would not allow the plaintiff to continue working as a busser. As a result, the plaintiff suffered a drastic reduction in take home pay because she was not working at all. Thus, for all intents and purposes the defendant's continued refusal to allow the plaintiff to work as a busser combined with the unavailability of alternative work at the diner resulted in an adverse employment action. Accordingly, the plaintiff has satisfied this prong.

### b. Whether the Plaintiff Suffered from Differential Application of Work or Disciplinary Rules

The defendant also argues that the plaintiff cannot meet the fourth prong of a <u>prima facie</u> case of pregnancy discrimination – whether the plaintiff suffered from differential application of work or disciplinary rules. This factor looks at "whether the employees are involved in or accused of the same or similar conduct and are

disciplined in different ways." <u>Burke-Fowler v. Orange Cnty., Fla.</u>, 447 F.3d 1319, 1323 (11th Cir. 2006) (quotations and citations omitted). The plaintiff does not address this prong in her response in opposition to the defendant's motion for summary judgment. <u>See</u> Plaintiff Donna Hill's Response in Opposition to Defendant Lazarou Enterprises, Inc.'s Motion for Summary Judgment (DE# 95, 1/18/11). Although the plaintiff moved for leave to file a surreply, no surreply was actually filed with the Court. The plaintiff has presented no evidence concerning the defendant's treatment of other employees. In some cases, the plaintiff may satisfy this prong where she shows that she was replaced by an individual outside her class. <u>See</u> <u>e.g.</u>, <u>Shockley v. HealthSouth Cent. Ga Rehab.</u> <u>Hosp.</u>, 293 Fed. App'x 742, 745 (11th Cir. 2008) (in race discrimination case, stating that "[b]ecause [the plaintiff] did not show that similarly situated employees outside of her protected class were treated more favorably or that she was replaced by an individual outside of her protected class, she did not establish her <u>prima</u> <u>facie</u> case for discrimination."). Here, the plaintiff has presented no evidence concerning the characteristics of the individual who replaced her.[27] Accordingly, because the plaintiff has failed to address this prong, the undersigned concludes that the plaintiff has failed to meet her burden of proof in establishing that she suffered from differential application of work or disciplinary rules. Because the plaintiff has failed to establish a <u>prima</u> <u>facie</u> case, the undersigned does not need to address the second and third step of the <u>McDonnell Douglas</u> analysis: whether the defendant can proffer a legitimate, nondiscriminatory reason for the adverse employment action and whether the plaintiff

---

[27] Ms. Lazarou-Amanna has presented undisputed evidence that the plaintiff was replaced, even though the plaintiff was not immediately replaced.

can establish pretext.

In sum, the plaintiff cannot establish a prima facie case of pregnancy discrimination because she cannot meet the fourth prong. However, the plaintiff need only establish a prima facie case if there is no direct evidence of discrimination and the plaintiff is relying on circumstantial evidence to prove her case. "Where the plaintiff seeks to prove her case with direct evidence, the McDonnell Douglas test does not apply." Weiner v. Flyer Pub. Co., 945 F. Supp. 1559, 1561 (S.D. Fla. 1996). The plaintiff in the instant case claims this is a direct evidence case. Plaintiff Donna Hill's [Reply] Memorandum in Support of Her Motion for Summary Judgment (DE# 104 at 2, 2/13/11). Thus, the defendant would not be entitled to summary judgment in the instant case, if the plaintiff can show direct evidence of discrimination. The undersigned will now address the plaintiff's motion for partial summary judgment which is premised on direct evidence of discrimination.

### 2.    Plaintiff's Motion for Partial Summary Judgment

The plaintiff seeks summary judgment on the issue of liability. The plaintiff argues that this is a direct evidence case. Plaintiff Donna Hill's [Reply] Memorandum in Support of Her Motion for Summary Judgment (DE# 104 at 2, 2/13/11). "The standard for offering direct evidence of discriminatory intent is a stringent one, and only the most blatant comments will serve to prove such intent." LeBlanc v. TJX Cos., Inc., 214 F. Supp. 2d 1319, 1325 (S.D. Fla. 2002) (citing Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081-82 (11th Cir. 1990); see also Castle v. Sangamo Westin, Inc., 837 F.2d 1550, 1558 n.13 (11th Cir. 1988) (noting that an example of direct evidence in an age discrimination case would be a scrap of paper saying, "Fire Rollins-she is too old.").

30

Moreover, "a facially discriminatory employment policy . . . is direct evidence of discriminatory intent." Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000); see also Sanders v. Southwestern Bell Telephone, L.P., 544 F.3d 1101, 1105 (10th Cir. 2008) (observing that "an employer's policy, discriminatory on its face, is direct evidence of discrimination.").

The plaintiff's motion for summary judgment relies on the existence of a discriminatory policy. See Plaintiff Donna Hill's Motion for Summary Judgment as to Liability (DE# 90 at 6, 1/11/11). The plaintiff argues that the defendant had a policy requiring employees at the Flashback Diner to promptly reveal their pregnancies and obtain a doctor's note before returning to work. Plaintiff Donna Hill's Motion for Summary Judgment as to Liability (DE# 90 at 6, 1/11/11). The defendant maintains that "there should be no dispute that no policy exists." Lazarou's Memorandum of Law in Opposition to Hill's Motion for Partial Summary Judgment as to Liability (DE# 96 at 3, 1/31/11). For the reasons stated below, the existence of this policy is a material issue of fact which cannot be resolved on summary judgment.

There is certainly some evidentiary support for the existence of a policy targeting pregnant employees in the testimony of Ms. Lazarou-Amanna at the unemployment hearing. It has not been fabricated by the plaintiff or solely in the imagination of the plaintiff's counsel as the defendant would have the Court believe. For instance, at the unemployment hearing, Ms. Lazarou-Amanna testified as follows: "[the plaintiff] was telling the employees here [that she was pregnant] and, of course, it got to us. And [the plaintiff] was advised by a couple of the employees that she should let us know and let us know the limitations because **that is part of the policy**." Unemployment Hearing

31

(DE# 71-5 at 26, 12/7/10) (emphasis added). Moreover, when asked if she "as a routine practice require[d] pregnant employees to go see a doctor and come back with a note," Ms. Lazarou-Amanna responded "[a]lways." Id. at 35. Ms. Lazarou-Amanna also relayed the following conversation with the plaintiff:

> When I read that note [the first note from Dr. Hanna] is when I was alarmed and I said: "Are you okay? What is happening? How come you did not know?" She said, "Complications." I said, "Well, please provide something to say that **you can continue doing the job**." "Fine." So that was the time that I requested the second note along with Jamal Qazi; and we said, "Please, if you have complications, we need to know and we will accommodate you with another job."

Id. at 37 (emphasis added).

Ms. Lazarou-Amanna has now filed an affidavit in opposition to the plaintiff's motion for summary judgment. See Affidavit of Panagiota (Toula) Lazarou-Amanna (DE# 96-5, 1/31/11). In her affidavit, Ms. Lazarou-Amanna states, in pertinent part: "LAZAROU has no policy regarding pregnant employees. LAZAROU has a policy regarding **employees with medical conditions that request accommodation**. LAZAROU requests a [d]octor's note when a change in employment is requested due to medical reasons. That is our policy." Id. ¶9 (emphasis added).

The plaintiff argues that the Court should strike or disregard Ms. Lazarou-Amanna's affidavit because it is allegedly contradicted by Ms. Lazarou-Amanna's sworn testimony at the unemployment hearing. Plaintiff Donna Hill's [Reply] Memorandum in Support of Her Motion for Summary Judgment (DE# 104 at 5, 2/13/11). The plaintiff relies on the sham affidavit rule which provides that: "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that

merely contradicts, without explanation, previously given clear testimony." <u>Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.</u>, 736 F.2d 656, 657 (11th Cir. 1984). It is important to note, that this "rule is applied 'sparingly because of the harsh effect it may have on a party's case.'" <u>Allen v. Bd. of Pub. Educ. for Bibb Cnty</u>, 495 F.3d 1306, 1316 (11th Cir. 2007) (quoting <u>Rollins v. TechSouth, Inc.</u>, 833 F.2d 1525, 1530 (11th Cir. 1987)).

The defendant maintains that "there is little inconsistency in the prior testimony of [Ms.] Lazarou-Amanna at [the] unemployment [hearing] compared to her sworn affidavit." Lazarou's Surreply in Opposition to Hill's Motion for Partial Summary Judgment as to Liability (DE# 121 at 3, 2/25/11). The defendant also suggests, without citing any case law, that the sham affidavit rule does not apply here because Ms. Lazarou-Amanna's prior testimony was not obtained at a deposition but at an unemployment hearing. <u>Id.</u> at 2. The undersigned sees no reason to distinguish between sworn testimony at an unemployment hearing and sworn testimony at a deposition. <u>See</u>, <u>e.g.</u>, <u>McCormick v. City of Fort Lauderdale</u>, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003) (addressing the sham affidavit rule where affidavit in question allegedly contradicted prior sworn statement). This is particularly true in the instant case where the defendant itself has relied on the testimony presented at the unemployment hearing.

Ms. Lazarou-Amanna's affidavit should not be stricken for a different reason. In order to be stricken as a sham, an affidavit must be **inherently inconsistent**. <u>Rollins v. TechSouth, Inc.</u>, 833 F.2d 1525, 1530 (11th Cir. 1987) (citing <u>Tippens v. Celotex Corp.</u>, 805 F.2d 949, 953-54 (11th Cir. 1986)). The undersigned finds that the differences

33

between the Ms. Lazarou-Amanna's testimony at the unemployment hearing and her affidavit are not so inherently inconsistent as to warrant the striking of her affidavit as a sham. For example, Ms. Lazarou-Amanna's affidavit states: "In early December 2008, [the plaintiff] requested the accommodation of a different position because she was bleeding." Affidavit of Panagiota (Toula) Lazarou-Amanna (DE# 96-5, ¶3, 1/31/11). When questioned by the plaintiff's counsel at the unemployment hearing, Ms. Lazarou-Amanna testified as follows:

> Q.   Did Ms. Hill ever ask you for an accommodation for her pregnancy? Did she ask you, ma'am?
>
> A.   On the 9th of December she gave me the paper from her doctor stating that she cannot lift more than twenty pounds.
>
> Q.   That was not my question, ma'am. My question is: You asked her to go to the doctor and get a doctor's note, didn't you?
>
> A.   Yes.
>
> Q.   Okay. Before you asked her to go bring a doctor's note, did Ms. Hill come to you and say: "I am pregnant. I need a reasonable accommodation at work?" Did she?
>
> A.   Yes.
>
> Q.   Oh, she did; and when was this?
>
> A.   On December 9th.
>
> Q.   On December 9th she came to you and she said, "I am pregnant, I need an accommodation?"
>
> A.   Yes, "because I cannot lift more than twenty pounds based on my doctor."

*       *       *

> **Q.   Okay, and prior to the time that you asked her to get a doctor's note, she had never asked you for an accommodation or told**

34

> **you that she had a restriction, isn't that true?**
>
> **A.    Correct.**
>
> **Q.    Okay. So when you found out that she needed a restriction, in your words, it was only after you requested that she go to the doctor. Is that correct?**
>
> **A.    Correct.**

Unemployment Hearing (DE# 71-5 at 30, 33, 12/7/10) (emphasis added). Ms. Lazarou-Amanna's affidavit does not provide the date when the plaintiff requested an accommodation. Thus, Ms. Lazarou-Amanna's unemployment hearing testimony that the plaintiff asked for an accommodation after obtaining a note from her doctor imposing a 20 pound weight restriction (on December 9, 2008) is entirely consistent with her affidavit stating that the plaintiff requested an accommodation in early December 2008.

Ms. Lazarou-Amanna also attests that only employees seeking accommodations are required to obtain a doctor's note. Affidavit of Panagiota (Toula) Lazarou-Amanna (DE# 96-5, ¶9, 1/31/11). Ms. Lazarou-Amanna's testimony at the unemployment hearing certainly suggests that pregnant employees were required to obtain a doctor's note, not as an accommodation, but to remain in the same position: "Yes, and I expected the doctor to clear [the plaintiff] because we have a lot of pregnant people here and **they come back with usually no restrictions and able to do the job they had been doing**." Unemployment Hearing (DE# 71-5 at 35, 12/7/10) (emphasis added). At the unemployment hearing, Ms. Lazarou-Amanna also stated "[s]o upon hearsay that she was pregnant, we asked her to provide documentation that she had

no limitations **to continue performing the job that she was performing** . . . ."
Unemployment Hearing (DE# 71-5 at 26, 12/7/10) (emphasis added). Ms. Lazarou-
Amanna explained that the requirement of obtaining a doctor's note was "[j]ust to make
sure that [the employees] are able and they have no problems and that **they can
continue doing the job they are doing**. That's all I am looking for." Id. (emphasis
added). Thus, at the unemployment hearing, Ms. Lazarou-Amanna did not testify that
the doctor's note requirement was limited to situations where the employee was
seeking an accommodation. It is solely within the provence of the jury to make
credibility determinations. See Tippens, 805 F.2d at 954 (stating that "[i]n light of the
jury's role in resolving questions of credibility, a district court should not reject the
content of an affidavit even if it is at odds with statements made in an early
deposition.").

Whether the defendant had a policy requiring employees to promptly disclose
their pregnancies and obtain a doctor's note before returning to work is not an
appropriate issue to resolve on summary judgment. If the plaintiff's case survives the
defendant's summary judgment motion, the plaintiff is free to cross-examine Ms.
Lazarou-Amanna at trial concerning these alleged inconsistences and emphasize that
on the day she announced her pregnancy (December 7, 2008), the plaintiff was sent
home early and told to obtain a doctor's note even though she had not requested an
accommodation that day. Nonetheless, the Court should not take this issue from the
jury by striking Ms. Lazarou-Amanna's affidavit. "[A]ny question of credibility or weight to
be given to the evidence resulting from variances between an affidavit and deposition is

a question of fact for the trier of fact, be it the judge or jury." <u>Tippens v. Celotex Corp.</u>, 805 F.2d 949, 951 (11th Cir. 1986). Accordingly, the undersigned recommends that the Court consider Ms. Lazarou-Amanna's affidavit and find that there are genuine issues of material fact concerning the existence a facially discriminatory policy against pregnant employees at the defendant's diner. As such, the plaintiff's summary judgment motion based on the defendant's alleged policy requiring pregnant employees to disclose their pregnancies and obtain a doctor's note before returning to work should be **DENIED**.

A policy requiring pregnant employees to disclose their pregnancies and obtain doctor's notes before returning to work could constitute direct evidence of pregnancy discrimination. <u>See</u> <u>Nguyen v. City of Cleveland</u>, 229 F.3d 559, 563 (6th Cir. 2000) (stating that "a facially discriminatory employment policy . . . is direct evidence of discriminatory intent."). However, the existence of such a policy at the Flashback Diner is hotly disputed. The plaintiff has submitted record evidence to create a genuine issue of material fact concerning the existence this policy. There is also an issue of fact concerning whether the defendant was following this policy when it sent the plaintiff home on December 7, 2008 and told the plaintiff she needed to obtain a doctor's note before she would be placed back on the schedule. Based on the foregoing, the undersigned respectfully recommends that the Plaintiff Donna Hill's Motion for Summary Judgment as to Liability and Incorporated Memorandum of Law (DE# 90, 1/11/11) be **DENIED**.

**D.     The Plaintiff's Retaliation Claim**

The defendant seeks summary judgment on the plaintiff's retaliation

counterclaims under Title VII and the Florida Civil Rights Act. The undersigned

previously determined that the plaintiff's retaliation claim under the Florida Civil Rights

Act should be dismissed with prejudice based on the Florida litigation privilege. See

Report and Recommendation (DE# 111 at 13, 2/18/11). On March 8, 2011, the Court

adopted the undersigned's Report and Recommendation. See Order Adopting Report

and Recommendation (DE# 131, 3/9/11). Accordingly, only the plaintiff's Title VII

retaliation claim remains. The undersigned will address the defendant's summary

judgment motion with respect to the plaintiff's Title VII retaliation claim below.

"To establish a prima facie case of retaliation under Title VII, a plaintiff must

demonstrate: (1) that he engaged in statutorily protected activity; (2) that he suffered

adverse employment action; and (3) that the adverse employment action was causally

related to the protected activity." Harper v. Blockbuster Entm't Corp., 139 F.3d 1385,

1388 (11th Cir. 1998) (citation omitted). The defendant appears to be challenging the

plaintiff's ability to satisfy the second prong, namely that the plaintiff has not suffered an

adverse employment action. See Lazarou's Motion for Summary Judgment and

Memorandum of Law (DE# 71 at 6-8, 12/7/10). The defendant argues that because its

counterclaim was filed after the plaintiff's employment with the defendant concluded,

there can be no adverse employment action. The defendant relies on Hernandez v.

Crawford Bldg Material Co., 321 F.3d 528 (5th Cir. 2003) for support. See  Lazarou's

Motion for Summary Judgment and Memorandum of Law (DE# 71 at 7, 12/7/10).

However, as the undersigned indicated in the February 18, 2011 Report and

38

Recommendation, the Fifth Circuit's narrow interpretation of a retaliation claim as articulated in Hernandez is a minority view that is not followed by this Court. See Report and Recommendation (DE# 111 at 14-16, 2/18/11). Therefore, the defendant's motion for summary judgment should not be granted on this ground.

The defendant also appears to be arguing that a counterclaim cannot constitute adverse employment action unless it is baseless and that its counterclaim is not baseless because the plaintiff provided false information to the EEOC, Unemployment Appeals Commission and this Court. See Lazarou's Motion for Summary Judgment and Memorandum of Law (DE# 71 at 8, 12/7/10). The defendant cites Tenth Circuit case law in support of this argument. See id. (citing Martin v. Gingerbread House, Inc., 977 F.2d 1405 (10th Cir. 1992)). Under Florida law, "there are four elements of fraudulent misrepresentation: '(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation.'" Butler v. Yusem, 44 So. 3d 102, 105 (Fla. 2010) (quoting Johnson v. Davis, 480 So. 2d 625, 627 (Fla.1985)). The defendant does not identify the false information it alleges the plaintiff provided to the EEOC, Unemployment Appeals Commission and to the Court.  However, if the defendant is referring to the plaintiff's acknowledgment of the incorrect dates provided on her EEOC complaint, the plaintiff testified at her deposition that the incorrect information was provided due to mistake. See Deposition of Donna Hill (DE# 71-3 at 36-37, 12/7/10). The defendant has not pointed to any evidence showing that she knowingly provided the false dates with the intent to induce harm. Further, the undersigned does not see

39

how the incorrect statements regarding the plaintiff's employment start date are material to the EEOC's determination of the plaintiff's complaint for discrimination or how the incorrect statements would cause any injury to the defendant. With respect to the Unemployment Appeals Commission, the only incorrect information provided that the undersigned is aware of is the date the plaintiff discovered she was pregnant. Similar to the incorrect start date provided to the EEOC, the undersigned does not see how the date the plaintiff discovered her pregnancy is material to any decision the Unemployment Appeals Commission would make regarding the plaintiff. The defendant also argues that the plaintiff provided false information to this Court. Again, the only incorrect information provided to the Court that the undersigned is aware of is the date the plaintiff discovered her pregnancy. This information has been corrected by the plaintiff in a subsequent filing. Notice of Amendment of Amended Complaint by Interlineation (DE# 49, 10/30/10). Therefore, the defendant's motion for summary judgment should not be granted on this ground.

The defendant further argues that it is entitled to summary judgment on the plaintiff's retaliation claim because the plaintiff "has suffered no material adverse consequences, nor any financial damages as a result of [the defendant]'s counterclaim and with no damages she has no cause of action." Lazarou's Motion for Summary Judgment and Memorandum of Law (DE# 71 at 8, 12/7/10). The defendant cites to Crawford v. Carroll, 529 F.3d 961, 972 (11th Cir. 2008) and Burlington Northern & Santa Fe Railway Company v. White, 548 U.S. 53, 68 (2006) in support of its argument. Id. The plaintiff's response to the defendant's argument that the plaintiff has incurred no damages as a result of the counterclaims is as follows:

> Finally, for the Defendant to deny that its counterclaim has caused [the plaintiff] any damages is likewise unfathomable (Motion p. 8). She has had to incur attorneys' time and costs in defending against it. It has caused her added stress (Exh. 3, pp. 85-86). As actionable retaliation, [the plaintiff] is entitled to punitive damages against the Defendant under both 42 U.S.C. 1981a(b)(1) and § 760.11(5), Fla. Stat.

Plaintiff Donna Hill's Response in Opposition to Defendant Lazarou Enterprises, Inc.'s Motion for Summary Judgment (DE# 95 at 11, 1/18/11).

The Eleventh Circuit in Crawford explained that in discrimination and retaliation claims, it has required the employee to establish an "ultimate employment decision" or make some other showing of substantiality in the employment context in order to establish an adverse employment action. Crawford, 529 F.3d at 970 (citing Stavropoulos v. Firestone, 361 F.3d 610, 616-17 (11th Cir. 2004); Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000); Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir. 2001)). The Eleventh Circuit defined ultimate employment decisions "as those 'such as termination, failure to hire, or demotion'" and "required that conduct falling short of an ultimate employment decision must, in some substantial way, 'alter[ ] the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely affect [ ] his or her status as an employee.'" Crawford, 529 F.3d at 970 (quoting Stavropoulos, 361 F.3d at 617; Gupta, 212 F.3d at 587). However, Crawford acknowledged that the Supreme Court in Burlington "effectively rejected the standards applied by [the Eleventh Circuit] in both Stavropoulos and Gupta that required an employee to show either an ultimate employment decision or substantial employment action to establish an adverse employment action for the purpose of a Title VII retaliation claim" and that the Supreme

Court's more liberal view construes materially adverse action as that which "'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Crawford, 529 F.3d at 973 (quoting Burlington, 548 U.S. at 68).

Crawford involved a plaintiff who alleged improper denial of a merit pay increase and promotion and discrepancy in pay and responsibilities, but did not allege retaliatory filing of a counterclaim as in the instant case. See Crawford, 529 F.3d at 969. In the context of an alleged retaliatory counterclaim, this Court has required the plaintiff to show that the defendant's counterclaim "(1) [was] filed for a retaliatory motive and (2) lack[s] reasonable basis in fact or law." Ramos v. Hoyle, No. 08-21809-CIV, 2009 WL 2151305, at *8 (S.D. Fla. Jul. 16, 2009) (quoting Munroe v. PartsBase, Inc., No. 08-80431-CIV, 2009 WL 413721, at *8 (S.D. Fla. Feb. 18, 2009)). Because the analysis in Crawford is not applicable to an allegation of retaliatory filing of a counterclaim, the defendant's request for summary judgment on the plaintiff's retaliation claim should not be granted on this basis. Neither party has addressed the sufficiency of the plaintiff's retaliation claim under the applicable Ramos two-pronged test.

In sum, the undersigned finds that there are genuine issues of material fact concerning whether the defendant asserted the counterclaim against the plaintiff in retaliation of the plaintiff's filing of an EEOC charge and the instant lawsuit. Accordingly, the defendant is not entitled to summary judgment on the plaintiff's Title VII retaliation claim. Based on the foregoing, the undersigned recommends that the defendant's motion for summary judgment on the plaintiff's Title VII retaliation claim be **DENIED**.

**E.      Breach of Contract Counterclaim**

The defendant also seeks summary judgment on its breach of contract counterclaim. Lazarou's Motion for Summary Judgment and Memorandum of Law (DE# 71 at 10, 12/7/10). The undersigned previously recommended that the Court dismiss with prejudice the defendant's breach of contract counterclaim. See Report and Recommendation (DE# 111 at 28, 2/18/11) (relying on the long-established precedent that rights under Title VII cannot be prospectively waived). On March 8, 2011, the Court adopted the undersigned's Report and Recommendation. See Order Adopting Report and Recommendation (DE# 131, 3/9/11). Accordingly, the defendant's motion for summary judgment on its breach of contract counterclaim should be **DENIED**.

**F.      Defendant's Request for Sanctions**

The defendant asks that the Court impose sanctions against the plaintiff and her counsel. Lazarou's Memorandum of Law in Opposition to Hill's Motion for Partial Summary Judgment as to Liability (DE# 96 at 2, 1/31/11). The defendant specifically asks for attorney's fees for drafting a response and objections to allegedly undisputed facts. Id. at 10. The defendant states: "[the plaintiff] and her attorney continue to make arguments that have no basis in fact or law and are supported only by the testimony of [the plaintiff] and the imagination of her attorney." Id. at 1. The defendant continues to advance Rule 11-type arguments, yet it fails to invoke Rule 11 and follow its procedural safeguards. See Report and Recommendation (DE# 98 at 4, 1/31/11) (stating that "[t]o the extent that the defendant seeks to advance a Rule 11-type argument, the Court should deny this request for sanctions. Rule 11 requires that a motion for Rule 11

43

sanctions be made separately from any other motion and provides for other procedural safeguards including a 21-day safe harbor provision.") (citing Fed. R. Civ. P. 11 (c)(2)). The defendant does not indicate that it is invoking the Court's inherent power. However, to the extent that the defendant is seeking sanctions pursuant to the Court's inherent power, the Court should also deny this request as there is no indication that the plaintiff's motion for summary judgment or statement of undisputed facts was filed in bad faith. See Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998) (stating that "[t]he key to unlocking [the] court's inherent power is a finding of bad faith."). The undersigned recommends that the defendant's request for sanctions contained in its response in opposition to the plaintiff's motion for summary judgment be **DENIED**.

## CONCLUSION

There are genuine issues of material fact which preclude summary judgment on the plaintiff's discrimination and retaliation claims. The Court has already dismissed the defendant's  breach of contract counterclaim and the defendant has failed to show entitlement to sanctions in the form of attorney's fees for responding to the plaintiff's summary judgment motion and statement of undisputed facts. Accordingly, the undersigned respectfully recommends that the parties' cross-motions for summary judgment be **DENIED** in their entirety for the reasons stated herein.

## RECOMMENDATION

In accordance with the foregoing, the undersigned respectfully recommends that Lazarou's Motion for Summary Judgment and Memorandum of Law (DE# 71, 12/7/10) and the Plaintiff Donna Hill's Motion for Summary Judgment as to Liability and

Incorporated Memorandum of Law (DE# 90, 1/11/11) be **DENIED**.

The parties have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Paul C. Huck, United States District Court Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. See LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988); RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this **17th** day of March, 2011.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
United States District Judge Huck
All Counsel of Record

45